The opinion of the court was delivered by
LASSER, P.J.T.C.
Taxpayer contests a deficiency assessment of business personal property tax (BPPT) for the years 1981 through 1985 imposed by reason of property of taxpayer located at compressor stations in Lambertville, Linden and Hanover and at 18 metering and regulating stations in various locations within the State of New Jersey. Taxpayer contends that this property is real property that is not subject to tax under N.J.S.A. 54:11A-1 et seq., the business personal property tax statute.
I.
Taxpayer is in the business of transporting natural gas from points outside New Jersey to locations in New Jersey and points outside New Jersey.
The property in question consists of compressors, regulators, gauges, piping, tanks, cooling systems, electrical systems, compressed air systems, lubricating air systems, supervising controls and instrumentation used by taxpayer for the purpose of compressing and moving gas through the pipeline and metering and regulating the amount of gas sold to customers.
The Director agrees that the mainline gas pipeline is real property and that all structures which directly house compressor engines and related equipment, as well as structures housing metering and regulating equipment, including all concrete foundations, support beams and ceilings thereto, are to be taxed as real property. Taxpayer agrees that the communications and laboratory equipment is to be treated as personal property.
Taxpayer has presented testimony as follows. The compressors at Lambertville, Linden and Hanover are permanently grouted in cement and bolted to massive concrete underground foundations as large as 40 feet wide and 60 feet long and are *201 connected to underground pipelines. Massive foundations are necessary because of vibrations produced by the compressor engines. The foundations are sunk to the depth of bedrock. The compressors at Lambertville weigh 180,000 pounds, are 18 feet wide, 10-11 feet high and 25-30 feet long. They were installed in 1951 and have not been moved since. The compressors are so large they could not be removed without first dismantling the buildings that shelter them. There are no design features intended to facilitate removal of the compressors. The cost of installation is high relative to the cost of the materials used. Since about 40% of the cost for metering and regulating (M & R) stations is for installation, it is more expensive to modernize obsolescent stations than to build replacement facilities. M & R stations have been removed or retired in only a few instances and then only because of expansion or equipment obsolescence. If an old station was removed from its site, it was scrapped and never installed somewhere else. Where the need for the equipment is constant, the installation stays at the site indefinitely.
Director contends that the property in question is machinery, apparatus and equipment which is personal property, not real property, and is therefore subject to the BPPT. Director argues that the subject property is not functionally essential to support the habitability of any structures nor are they structures themselves within the meaning of the applicable statutes and regulations. Director states that taxpayer maintains separate accounts for structures, site improvements, landscaping, fencing, building and mainline piping and that taxpayer’s records show that the compressor station equipment account records the original cost at $4,537,614.52 as of the December 31, 1976 qualifying date, and the original cost shown in the metering and regulating station equipment account as of that date is $1,998,890.91. Director also relies on the cross-examination testimony of taxpayer’s witness that overhead cranes permanently installed in the buildings housing the compressors were used for the installation and removal of machinery and equipment such as electric motors, pumps and auxiliary genera *202 tors. One crane, installed outdoors and suspended above the roof of a compressor-station building, was used to pull certain machinery out of the building through the roof.
Taxpayer contends that the subject property is taxable as real property because it is personal property affixed to real property and cannot be removed without injury to the real property or itself, and is the type of personal property ordinarily intended to be affixed permanently to real property. Taxpayer argues that the 1986 amendment of N.J.S.A. 54:4-1 (chapter 117 of the Laws of 1986) was intended to broaden the court’s definition of real property, citing the Assembly Appropriations Committee Statement to Senate Bill 1758 (1986) as follows:
This definition of real and personal property is intended to preserve the local property tax base by establishing a statutory test for determining whether or not to tax personal property as real property. Some recent court decisions have applied the “material injury” test in deciding whether or not to tax certain personal property as real property and that test has unduly narrowed the definition of real property. These amendments establish a new test which broadens that court definition. The statutory test will clarify that personal property, once affixed to real property, becomes taxable as real property if the personal property is of a type or class which ordinarily remains with the real property for the period of its useful life. [Assembly Appropriations Committee Statement to Senate Bill 1858 (1986); emphasis supplied]
Taxpayer relies on NYT Cable TV v. Audubon Borough, 9 N.J.Tax 359 (Tax Ct.1987), aff’d 230 N.J.Super. 530, 553 A.2d 1368 (App.Div.1989), certif. den. 117 N.J. 646, 569 A.2d 1344 (1989), in which the court held that plaintiff’s cable antenna tower was real property because it was a “total structure [that] was intended to be built as a whole unit and as completed it constitutes a unitary improvement to real estate; the metal superstructure was never ‘goods and chattels,’ or ‘machinery’ or ‘equipment’ that was attached to real estate.” [1] Id. at 371. *203 Taxpayer contends that the subject property constitutes improvements to the freehold, not personal property that has been affixed to real property.
II.
The BPPT imposes a tax of $1.30 per $100 on 50% of the original cost of personal property used in business. N.J.S.A. 54:11A-2(c), -3, -4, -5. Machinery and equipment acquired on or after, or brought into this state on or after January 1, 1977 is exempt from tax. N.J.S.A. 54-.11A-3.1. Also exempt from BPP taxation are “goods and chattels which are taxable as real property pursuant to R.S. 54:4-1.” N.J.S.A. 54:11A-2(b)(2).
N.J.S.A. 54:4-1 as amended by L. 1986, c. 117, § 1 states in relevant part:
Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless:
a. (1) The personal property so affixed can be removed or severed without material injury to the real property; (2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and (3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or
b. The personal property so affixed is machinery, apparatus, or equipment which is neither functionally essential to a structure the personal property is within or to which the personal property is affixed nor constitutes a structure itself.
Also as amended by c. 117, N.J.S.A. 54:11A-2 states:
(b) Personal property used in business shall mean tangible goods and chattels used or held for use in any business, transaction, activity or occupation conducted for profit, but shall not include:
(2) goods and chattels which are taxable as real property pursuant to N.J.S.A. 54:4-1.
*204 Director has promulgated regulations which provide the following definitions in N.J.A.C. 18:12-10.1 that are applicable to N.J.S.A. 54:4-1, as amended by c. 117: *205 Moreover, personalty defined as machinery, apparatus or equipment under N.J.A.C. 18:24-4.2 also constitutes machinery, apparatus or equipment subject to tax under the BPPT. N.J.A.C. 18:12-10.1. Under N.J.A.C. 18:24-4.2, “machinery, apparatus or equipment” is described as:
*204 18:12-10.1 Definitions
The following words and terms, when used in the subchapter, shall have the following meanings, unless the context indicates otherwise.
“Affixed” means fastened or attached physically.
“Appurtenance” includes any tangible personal property affixed to land or improvements thereon.
“Functionally essential” refers to machinery, apparatus or equipment necessary for the habitability of the structure, including, but not limited to, such items as air conditioning and heating equipment or apparatus, lighting and bathroom fixtures, elevators, escalators, electrical wiring, plumbing, etc.
“Machinery apparatus or equipment” means any machine, device, mechanism, instrument, tool or other item of property directly used in the manufacture, assembly, refining or processing of property or in the sale of services or goods in the regular course of business. The term includes, but is not limited to, that machinery, apparatus or equipment described in N.J.A.C. 18:24-4.2. The term also includes machinery, apparatus or equipment directly used in the production for sale of gas, water, steam, electricity or telecommunication services and such items directly used in the production of property on farms as defined in N.J.S.A. 54:32B-8.16.
“Material injury” in the case of real property means serious physical damage to the real property. Some of the factors which can be considered in determining whether “serious physical damage” has occurred are any appreciable change in the market value of the real property as a result of removal; the amount of time and the cost required to repair the condition caused by removal; and the hazard or dislocation caused by the removal.
“Material injury” in the case of property severed or removed from the real property means physical damage to the personal property sufficient to destroy its utility.
“Not ordinarily intended to be affixed permanently to real property” means that, in the custom and usage of the trade, like personal property is not intended to be permanently affixed. Indicators that personal property of a like kind is not ordinarily intended to be affixed permanently to real property include the following:
1. In the event of sale of the realty, the personal property would not ordinarily pass with title to the realty;
2. In the case of a business, the personal property ordinarily would be removed from the real property in the event of the relocation of the business;
3. Similar items of personal property are frequently resold separate from the real property.
“Structure” means any assemblage of building or construction materials fixed in place for the primary purpose of supporting, sheltering, containing, or enclosing persons or property. The term “structure” does not include machinery, apparatus or equipment which the structure is designed to hold in place, shelter, contain or enclose.
*205 ... any complex, mechanical, electrical or electronic device, mechanism or instrument which is adapted to the accomplishment of a production process, and which is designed to be used, and is used, in manufacturing, converting, processing, fabricating, assembling, or refining tangible personal property for sale.
The Director states the issue to be whether the subject items constitute machinery, apparatus or equipment, and if so, whether they constitute structures in and of themselves or, if the property is within or affixed to a structure, whether such property is functionally essential to that structure. Director argues that each category of property that it contends is taxable under the BPPT is properly characterized as a “machine, device, mechanism, instrument, tool or other item of property directly used in the manufacture, assembly, refining or processing of property or in the sale of services or goods in the regular course of business.” See N.J.A.C. 18:12-10.1.
Further, the Director contends, the compressors, fin fans, scrubbers, supervisory control and station electrical system also fall within the definition of machinery, apparatus or equipment set forth at N.J.A.C. 18:24-4.2 since they constitute “complex mechanical, electrical or electronic devices, mechanisms or instruments which are adapted to the accomplishment of a production process in which they are designed to be used and are used in manufacturing, converting, processing, fabricating, assembling or refining tangible personal property for sale.”
The Director argues further that the tanks cannot qualify as items subject to local property tax by operation of law as none of them have been shown to have a capacity equal to or exceeding 30,000 gallons as required under N.J.S.A. 54:4-1.12. The Director concludes that none of the subject items constitute a structure or an item which is functionally essential to a structure in which the property is located or to which the property is annexed because they do not constitute any assem *206 blage of building or construction materials fixed in place for the primary purpose of “supporting, sheltering, containing or enclosing persons or property.” See N.J.A.C. 18:12-10.1. The Director argues that all of the items in issue are used exclusively by taxpayer in its business of transmitting natural gas product and none of the items can be characterized as “necessary for the habitability” of any structure to which they are affixed or within which they are contained.
III.
The amendment to N.J.S.A. 54:4-1 addressed a difficult and sometimes perplexing area of tax law, that is, the distinction between real and personal property. In chapter 117, the Legislature amended the definitions of real property and personal property. The Legislature was careful to limit the application of these definitions to tax law to avoid the confusion which previously existed when commercial transaction definitions were sought to be applied to tax law.
There are two parts to the Legislature’s new definitions. The first part provides that all land and the improvements thereon, including personal property affixed thereto, are taxable as real property unless the personal property so affixed can be removed without material injury to the real property or itself and is not ordinarily intended to be affixed permanently to the property. N.J.S.A. 54:4-l(a). In the second part, if the personal property so affixed is, by its nature, machinery, apparatus or equipment, it will not be taxed as real property if it is neither functionally essential to a structure it is within or affixed to nor constitutes a structure itself. N.J.S.A. 54:4-l(b).
For the purpose of this case, it has been conceded by the parties that the mainline pipe is real property. When the pipeline was constructed, it was made up of an assemblage of building and construction materials which are not doors, windows, bricks, wiring and plumbing, but pipes, valves, cooling systems and electrical systems. Beginning with the proposition that the mainline pipe is real property, all of the components *207 that are necessary for its operation and which are constructed as a part of the mainline pipe are also real property. When taken separately, any component of real property, for example, a stick of lumber, a brick, a door, or electric, heating or plumbing equipment may be personal property and may be regarded as machinery, apparatus or equipment. However, when combined, such components are regarded as a part of the whole of the real property.
I conclude that all property permanently affixed to the mainline pipe or used in connection with it for the purpose of containing gas and compressing and moving it through the pipelines and measuring, metering, regulating and storing gas (valves, pipes, gauges, regulators, compressors, cooling systems, electrical systems, compressed air systems, lubricating oil systems, supervising controls and instrumentation) is a part of the real property.
There is ample documentation of the intent of the Legislature with regard to the chapter 117 amendment of N.J.S.A. 54:4-1 and N.J.S.A. 54:11A-2(b)(2) to be found in the Statements to Senate No. 1858, dated April 7, 1986 and May 22, 1986, and in Governor Kean’s Objections and Eecommendations for Amendment to the Senate dated September 5,1986. These statements explain that the New Jersey Supreme Court in City of Bayonne v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979) formulated a new test to distinguish between that which is to be taxed as real property and that which is to be taxed as business personal property. This test is known as the “material injury” test. The legislative statement notes that this test was applied in the Tax Court decisions in Stem Bros., Inc. v. Alexandria Tp., 6 N.J. Tax 537 (Tax.Ct.1984) and Lawrence Associates v. Lawrence Tp., 5 N.J. Tax 481 (Tax Ct.1984). The statement explains that the amendment will substitute the “fixtures test,” and the statement notes that “municipalities are facing an immediate revenue problem concerning the loss of tax ratables that are being redefined as business personal *208 property.” The statement attached to the Assembly Amendments states:
The statutory test will clarify that personal property, once affixed to real property, becomes taxable as real property if the personal property is of a type or class which ordinarily remains with the real property for the period of its useful life. Thus, items such as toilets, sinks, water fountains and built in lighting fixtures will be taxed as real property.
However, machinery, apparatus and equipment used in business, even if affixed to real property, will not be subject to local property taxation under the definition because that property is not functionally essential to a structure or is not a type or class of property which is ordinarily intended to be affixed permanently to real property. Basically, such property is ordinarily moved when a business relocates, is frequently bought and sold separate from the real property and would not ordinarily be included in a deed of sale for the real property. The test excludes such property from real property taxation.
The definition of real property clarifies that land and improvements thereon are taxable as real property. Based on the definition, oil refineries are deemed to be structures and improvements to real property and, therefore, taxable as such.
The Governor’s objections and recommendations for amendment submitted to the Senate, dated September 5, 1986, which relate only to the aspects of the bill that dealt with storage tanks, states in part:
This bill is a response to certain recent court decisions that may result in the exemption from local property taxation of certain industrial property that has long been taxed locally.
Even if the subject property were to be regarded as machinery, apparatus or equipment, it is not only ordinarily permanently affixed but is also functionally essential to the structure. If the pipeline were sold, the property permanently affixed and functionally essential would be sold with the pipeline. To the extent that the mainline pipe is a structure, the subject property becomes part of that structure. The Director defines the term “structure” in N.J.A.C. 18:12-10.1 as follows: “ ‘Structure’ means any assemblage of building or construction materials fixed in place for the primary purpose of supporting, sheltering, containing, or enclosing persons or property.” This definition of a structure appears to be consistent with legislative intent when applied to general purpose real property. However, this definition is too restrictive when applied to *209 special purpose property.[2] An oil refinery does not have as its primary purpose the supporting, sheltering, containing or enclosing of persons or property, nor does a brewery, a public utility transformer station or a radio transmission tower, yet they are all structures. The legislative intent was to include oil refineries within the definition of real property, not to exclude them as machinery, apparatus or equipment. I therefore find that the Director’s definition of structure is limited to general purpose property and for special purpose property “structure” has a broader meaning.
Similarly, the use of the word “habitability” in the portion of the regulation defining “functionally essential” may be suitable for use in identifying machinery, apparatus and equipment which is to be taxed as real property when dealing with general purpose property. However, the use of the word “habitability” limits the definition of “functionally essential” to property with the primary purpose of sheltering or enclosing persons, omitting real property with the primary purpose of sheltering or enclosing property. The word “habitability” in the regulation is, therefore, inappropriate and contrary to legislative intent when applied to special purpose property. I therefore find that the Director’s definition of “functionally essential” is limited to general purpose property, and for special purpose property the word “purpose” must be substituted for the word “habitability” in order to carry out the intent of the Legislature. Thus, the definition of “functionally essential” must be read together with the definition of “structure” and against the background of the intent of the Legislature in enacting the chapter 117 amendment to find that for special *210 purpose property “functionally essential” means supporting, sheltering, containing or enclosing persons or property which are functionally essential for such special purpose.
The subject mainline pipe is a structure. The subject property may not be necessary for the “habitability” of the structure in the sense that it is not capable of sheltering persons, but since it is conceded that the mainline pipe is real property, it must therefore be a structure because it encloses property, namely, the gas which it encloses, moves and stores. The pipes, gauges, valves and controls which are ordinarily intended to be permanently affixed to the mainline pipe, although not necessary for the “habitability” of the mainline pipe, are functionally essential to the purpose of this special purpose property and are therefore to be taxed as real property.
Administrative regulations must be within the fair contemplation of the delegation of the enabling statute. N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978); In Re Houghton’s Estate, 147 N.J.Super, 477, 480, 371 A.2d 735 (App.Div.1977), aff'd o.b. per curiam, 75 N.J. 462, 383 A.2d 713 (1978); Sorensen v. Taxation Div. Director, 184 N.J.Super. 393, 2 N.J.Tax 470, 446 A.2d 213 (Tax Ct.1981); Mueller Estate v. Taxation Div. Director, 5 N.J.Tax 642, 656 (Tax Ct.1983). I conclude that N.J.A. C. 18:12-10.1 is not within the fair contemplation of the enabling statute to the extent that it deals with special purpose real property, and that the definition of the term “structure” and the use of the word "habitability” in the definition of “functionally essential” are invalid insofar as they may apply to special purpose property such as the subject pipeline.
Inquiry must, therefore, be made of the purpose of the property. Personal property affixed to a general purpose property is to be taxed as real property when it is necessary for the operation of the structure. Machinery, apparatus or equipment used in the business conducted in the structure and customarily removed when the real property is sold is not to be taxed as real property. However, if the property is special purpose *211 property, as in the subject case, the operation of the structure and the operation of the business conducted therein merge. That which would be regarded as machinery, apparatus or equipment and not taxed as real property if contained in a general purpose property is taxed as real property when affixed to special purpose property because it is functionally essential to the “special purpose.” Thus, items such as gauges and electrical control systems that would be regarded as personal property when used in the operation of the machinery, apparatus or equipment are to be taxed as real property when functionally essential to the purpose of special purpose property-
With respect to tanks, the statute specifically states that a tank “of more than 30,000 gallons is deemed to be real property.” N.J.S.A. 54:4-1.12. The statute is silent as to tanks of less than 30,000 gallon capacity. Thus, the statutory test of N.J.S.A. 54:4-1.12 and l.b must be used to determine whether the tanks are to be taxed as real or personal property.
I find that the intent of the Legislature in enacting a new test to differentiate between real and personal property was to broaden the definition of real property and narrow the definition of personal property and that this new test, unlike the prior “material injury” test, emphasized that personal property “ordinarily intended” to be affixed permanently to real property changes its nature for tax purposes and is to be taxed as real property. Excluded from this definition are those items of personal property which are clearly machinery, apparatus or equipment and which, although affixed to the real property, are not “ordinarily intended” to permanently remain but may be removed with relative ease and separately sold.
It was also clearly the intent of the Legislature that oil refineries, for instance, be classified as real property. It might be argued that oil refineries are machinery, apparatus or equipment used for producing petroleum products. However, an oil refinery is a special purpose property which constitutes a structure itself and is, therefore, excluded from the definition *212 of machinery, apparatus or equipment. Similarly, the pipeline in this case is a special purpose property which constitutes a structure itself, and all personal property affixed to the structure and functionally essential for its operation is to be taxed as real property.
Because the items in issue are so numerous, there may be among them items which are not affixed to real property or are not ordinarily intended to be affixed permanently to real property. The parties will identify such items, if any, for the purpose of preparing a form of judgment which will reflect the holding of the court. In identifying the items, those that are affixed to the mainline pipe or are affixed to items which in themselves are affixed to the mainline pipe, or are affixed to the buildings which are used in connection with the operation of the pipeline and are intended to be affixed permanently are to be identified as real property. Those items which are obviously machinery, apparatus or equipment, for instance, laboratory equipment, garage equipment or safety equipment, not ordinarily intended to be affixed permanently to real property and not functionally essential to the pipeline shall be identified as personal property. Any items which counsel cannot agree are either real property or personal property in accordance with this opinion shall be listed and submitted to the court for further decision.
Counsel shall furnish the proposed form of judgment or, if counsel cannot agree on the categorization of all items, shall submit within 30 days of receipt of this opinion the list of items to be categorized by the court.
IV.
Taxpayer contends that it is entitled to offset $165,702.97 of use taxes paid by it in error during the years 1982, 1983 and 1984 against business personal property taxes which may be found to be due from it for the years 1981 through 1985. Taxpayer states that these use taxes were paid in connection with the purchase of machinery, apparatus or equipment which *213 is exempt from sales and use tax under N.J.S.A. 54:32B-8.13(b) because it is used directly and primarily in the transmission or distribution of gas for sale.
A notice of deficiency assessment dated October 21, 1985 imposed a deficiency assessment of BPP tax for the years 1981-1985, corporation business tax for the year 1983 and sales and use tax for the period January 1, 1982 through December 31, 1984. On September 27, 1985, taxpayer sent a letter to the Division of Taxation via certified mail, return receipt requested, regarding the New Jersey sales and use tax audit for the period January 1, 1982 to December 31, 1984, which included the following:
Additionally, in our review of our major purchases of equipment and materials for installation by these contractors, we have found that tax in the amount of $166,470.16 was accrued and paid in error. Supporting workpapers are attached for your review, verification and audit report inclusion.
On November 19, 1985, taxpayer filed a protest of the deficiency assessments and, in addition, included the following in the protest:
... [TJhe corporation is entitled to a refund under the New Jersey Sales and Use Tax Act in the amount of $166,470.16 because of unrequired tax payments made in error by the corporation for exempt expenditures in the years at issue.
By letter of March 24, 1986, taxpayer corrected the claimed refund figure of $166,470.16 to $165,702.97. On November 30, 1987, a final determination letter stated that no sales or use taxes were due for the period January 1982 through December 1984, thus eliminating the use tax deficiency assessment of $108,954, but no mention was made of the claim for refund of $165,702.97. Director contends that the overpayment claim was sufficient to offset the entire deficiency assessment and that therefore there was no need to deal further with the refund claim.
Director further contends that since no formal refund claim had been filed, the overpayment could only be used to offset the deficiency use tax assessment and there could be no refund of any excess to taxpayer. Director also contends that a substantial portion of the overpayment was attributable to transactions occurring in 1982, which would be beyond the *214 two-year limitation period even if the letter of September 27, 1985 were regarded as a claim for refund.
The Sales and Use Tax Act contains a section which requires the Director to “refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application to the Director for such refund shall be made within 2 years from the payment thereof.” N.J.S.A. 54:32B-20.
I find that the letter of September 27, 1985, together with its supporting work papers, clearly sets forth the details of the claim for refund and constitutes a claim for refund in conformance with the statutory requirement. Taxpayer is, therefore, entitled to a credit or refund for all taxes erroneously paid within two years prior to September 27, 1985.
There are two pertinent facts not now before the court. First, the details of the determination by the Director to set aside the use tax deficiency assessment of $108,954 are not known. To what extent did the Director determine that all or part of that sum was attributable to transactions not subject to use tax, and to what extent did the Director determine that all or part was subject to use tax but was entitled to be offset by a credit for use tax erroneously paid by taxpayer? The second fact is the amount of use tax determined by the Director to have been erroneously paid within the two years prior to September 27, 1985. The parties will follow the procedure set forth in R. 8:9-3 and -4 with respect to these computations.

 The Appellate Division decision affirmed the Tax Court on the ground that the cable tower is of a type ordinarily intended to be affixed permanently to real property, meeting the § la(3) test, but did not address the Tax Court’s alternate holding that the tower and its foundation constituted a unitary improvement to real estate and that the metal superstructure was never goods *203 and chattels or machinery or equipment that was attached to real estate. 230 N.J.Super. at 534-535, 553 A.2d 1368.

 Special purpose property is limited market property with unique physical design, special construction materials, or layout that restricts its utility to the use for which it was built. American Institute of Real Estate Appraisers, The Dictionary of Real Estate Appraisal (2 ed. 1989) at 283. See also Pantasote Co. v. Passaic, 6 N.J.Tax 34, 39 (Tax Ct.1983), aff'd 7 N.J.Tax 663 (App.Div.1985), aff'd 100 N.J. 408, 495 A.2d 1308 (1985); Dworman v. Borough of Tinton Falls, 1 N.J.Tax 445, 452 (Tax Ct.1980), aff'd 180 N.J.Super. 366, 3 N.J.Tax 1, 434 A.2d 1134 (App.Div.1981).