HAMILL, J.T.C.
The subject of this local property tax appeal is a beer distribution warehouse located at 183 Three Brooks Road and designated as Block 72.06, Lot 1 on the Freehold Township tax map. For 1994, the year at issue, the property was assessed at $4,146,000. The assessment was reduced by the Monmouth County Board of Taxation to $3,100,000. The township has appealed the judgment of the county board.
Before the issue of valuation can be addressed, it must be determined whether certain interior walls and ceilings, most of which enclose two refrigerated areas within the warehouse, and the compressors and blowers that are related to the refrigerated areas, are realty, as defined in N.J.S.A. 54:4-1, or personalty and therefore not subject to local property taxation. It was decided to proceed first with the realty/personalty issue so that the parties’ appraisers would know what property should be included in valu *92 ing the warehouse. Accordingly, a hearing was held devoted exclusively to the realty/personalty issue. The value of the realty will be determined in a subsequent proceeding.
The warehouse contains approximately 89,600 square feet. A drive-through divides the warehouse into two segments. The wall on one side of the drive-through is constructed of concrete blocks, while the other wall is constructed of insulated panels measuring approximately two and one half by three feet each. The panels are approximately four to five inches thick and contain an insulating material with a metal sheath on each side. The panels attach to one another by means of a cam-lock fastener and are easily assembled and disassembled by means of a wrench that locks and unlocks the cam-lock. The insulating panels form the walls and ceilings of the two refrigerated areas within the warehouse. The ceiling panels are suspended from the roof by means of rods extending between the roof girders and the insulating panels. The rods fit into grooves in the roof girders and are attached to the insulated panels by means of clips that fit between the seams of the panels. At floor level the insulated panels are bolted or screwed to the floor by means of metal L plates. Around the base of the insulated panels is a metal curb filled with concrete, which protects the panels from being bumped by forklift trucks. Approximately seventy-five percent of the curbing and panels were originally used at a prior location of the taxpayer in Holmdel. The panels and curbing were disassembled at the Holmdel site and moved by truck to the Freehold site, where they were reassembled.
Although most of the insulated panels are used to segregate the refrigerated areas of the warehouse, a small portion of the paneling serves simply as a wall for an unrefrigerated area used for repacking, storing empty beer containers, and recharging electric vehicles.
Testimony of the taxpayer’s witnesses established that the cooling of the refrigerated space is accomplished by refrigeration equipment including blowers and compressors. Photos offered by the township show that the compressors are located on the outside *93 of the warehouse, while the blowers are located on the inside. Neither of these items is embedded in the walls or ceilings. Both appear to be discrete pieces of machinery attached to the walls or foundations of the warehouse.
The director of operations at the warehouse testified that he had been offered “used refrigeration space.” I presume he meant insulated wall and ceiling panels. In his view, the primary function of the panels was to cool the beer rather than to shelter or contain it. On cross examination he conceded that the insulated panels create walls and ceilings that segregate the beer needing refrigeration from beer that does not need refrigeration. He further testified that the taxpayer had intended to move the warehouse from the prior location in Holmdel, which was leased, but that there was no intention to move the warehouse from the Freehold site. He stated that, were it not for the need to refrigerate some of the beer, there would be no need for the insulated wall panels; the exterior walls of the warehouse would suffice to shelter the beer.
Plaintiffs other witness, the owner of a refrigeration installation company that had disassembled the insulated wall and ceiling panels of the Holmdel warehouse and reassembled the panels in Freehold, testified on cross-examination that the same insulating panels could be used as exterior walls with a steel frame underneath to support them. The wall panels would be functionally similar, serving, as they do in the subject property, to maintain the temperature within the structure. This witness agreed that, in order to make the refrigerated area operational, lights, refrigeration, and piping had to be installed.
Mention should be made of an issue concerning the burden of producing evidence that arose at the commencement of the hearing. As the plaintiff in this matter, the township has the ultimate burden of proving that the judgment of the county board is in error. Riverview Gardens v. Borough of North Arlington, 9 N.J. 167, 175, 87 A.2d 425 (1952); Rumson Borough v. Peckham, 7 N.J.Tax 539, 549 (Tax 1985). The township nevertheless maintains that, as to whether the property at issue constitutes realty or *94 personalty, the taxpayer has the burden of proof and thus the burden of presenting an affirmative case. I ruled in favor of the township on this point and directed the defendant taxpayer to proceed with its proofs on the realty/personalty issue.
Initially, it should be pointed out that what the township labels the burden of proof on the realty/personalty issue is more accurately described as the burden of producing evidence or the duty of going forward. N.J.R.E. 101(b)(2) and Biunno, Current N.J. Rules of Evidence, comment to N.J.R.E. 101(b)(2) (1995). The burden of proof or persuasion refers to the “obligation which a party must meet in order to prevail on a claim or defense.” Biunno, supra, comment 1 to N.J.R.E. 101(b)(1). The burden of producing evidence refers to the obligation of a party to introduce evidence to avoid a finding against him on a particular fact. N.J.R.E. 101(b)(2) and comment to N.J.R.E. 101(b)(1).
Here, the township, as plaintiff challenging the judgment of the county board, has the ultimate burden of persuasion, but defendant taxpayer has the burden of producing evidence on the realty/personalty issue. This is so for two reasons. First, the township has the benefit of a statutory presumption that the property in question is realty. N.J.S.A 54:4-1 provides in pertinent part:
Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto unless: [the conditions specified in subsections (a) or (b) are met].
Under the language of the statute, it is plain that unless countervailing evidence is produced, personal property affixed to real property is deemed to be real property. See American Hydro Power Partners v. Clifton, 11 N.J.Tax 12, 22-23 (Tax 1990), aff'd in part, 12 N.J.Tax 264 (App.Div.1991). Although not labeled a presumption, the effect of the statute is the same. Once the basic fact is established, i.e., the existence of personal property affixed to real property, the presumed fact is deemed established, i.e., that the personal property is real property, unless evidence is produced to rebut the presumption. See N.J.R.E. 301. The difference between the operation of N.J.S.A. 54:4-1 and a normal *95 presumption is that the statute sets forth in subsections (a) and (b) the proofs that must be produced to rebut the presumption.
The effect of the statutory presumption is to place on the party opposing the presumption the burden of producing evidence. “If no evidence tending to disprove the presumed fact is presented, the presumed fact shall be deemed established if the basic fact is found or otherwise established.” N.J.R.E. 301. “[T]he burden of producing evidence on the issue upon which a presumption operates is on the party desiring a result contrary to that compelled by the presumption.” Rumson Borough v. Peckham, supra, 7 N.J.Tax at 547. As made clear in N.J.R.E. 301, the burden of persuasion does not shift to the party against whom the presumption is directed, but the burden of producing evidence or going forward does shift to that person.
As the insulated wall and ceiling panels are, at the very least, personal property affixed to real property, the statutory presumption that they are real property arises, and the taxpayer has the burden of producing evidence to show otherwise.[1]
Quite apart from the statutory presumption, the burden of going forward on the realty/personalty issue should be placed on the taxpayer because the taxpayer has greater access to the relevant information. N.J.R.E. 101(b)(2), Biunno, supra, Comment to N.J.R.E. 101(b)(2); In re G.E. v. State, 131 N.J. 552, 569-70, 622 A.2d 227 (1993). Such information includes facts necessary to establish that the property in question is not “ordinarily intended to be affixed permanently to real property” or is not machinery that is intended to enable a structure to “support, shelter, contain, enclose or house persons or property.” N.J.S.A. 54:4-1.
N.J.S.A 54:4-1 defines taxable real property as (1) all land and improvements thereon and (2) personal property affixed to real *96 property unless (a) the personal property can be removed without material injury to itself or the real property and “is not ordinarily intended to be affixed permanently to real property” or (b) the personal property is “machinery, apparatus, or equipment used or held for use in business” provided the machinery, apparatus or equipment is not a structure nor has as its primary purpose enabling a structure to support, contain, enclose or house persons or property.
Taxpayer maintains that the walls and ceilings of the refrigerate ed areas are not improvements to real property because the warehouse itself is the improvement and the bulk of the wall and ceiling panels were moved from the taxpayer’s prior location and can be moved again. The township asserts that the insulated walls and ceilings create a building or structure no different than other interior space that is framed in with walls and a dropped ceiling.
As to the subsection (a) test, taxpayer maintains that the insulated walls and ceilings are not ordinarily intended to be affixed permanently to real property because it has met the test set forth in N.J.AC. 18:12-10.1, specifically, that the insulated panels are frequently resold separate from the real property and that the panels would be removed from the real property in the event defendant relocates its warehouse business. The township counters that taxpayer failed to carry its burden of establishing that the walls and ceilings of the refrigerated areas are “not ordinarily intended to be affixed permanently to real property.”
As to the subsection (b) test, taxpayer argues that the walls and ceilings of the refrigerated areas constitute equipment as defined in N.J.AC. 18:12-10.1 because they are “item[s] of tangible personal property used or held for use in business.” Taxpayer maintains that the primary purpose of the insulated walls and ceilings is not to contain property but rather to refrigerate it. The township responds that the walls and ceilings of the refrigerated areas are not machinery, apparatus, or equipment, with the result that subsection (b) does not come into play. Alternatively, if viewed as machinery, apparatus, or equipment, the township *97 maintains that the walls and ceilings are structures and therefore taxable as real property.
Taxpayer offered no argument regarding the blowers and compressors. The township concedes that the blowers and compressors are not improvements to real property and concedes that they constitute machinery, apparatus, or equipment. However, according to the township, the primary purpose of the compressors and blowers is to enable a structure to house property and they therefore constitute taxable real property under subsection (b). Moreover, according to the township, there has been no proof that the blowers and compressors are not ordinarily intended to be affixed permanently to real property and they therefore constitute taxable real property under subsection (a).
As a matter of logic, the first issue that should be addressed is whether the walls and ceilings of the refrigerated areas constitute improvements to real property. If so, the property would be taxable real property and it would be unnecessary to proceed further with the analysis. The difficulty with that approach is that the line between an improvement to real property and personal property affixed to real property is unclear, and recent decisions have not provided much guidance. Thus, for instance, in NYT Cable TV v. Borough of Audubon, 230 N.J.Super. 530, 534-35, 553 A.2d 1368 (App.Div.), certif. denied, 117 N.J. 646, 569 A.2d 1344 (1989), the Appellate Division affirmed the Tax Court’s conclusion that a 250-foot high cable antenna tower was real property under L.1986, c. 117 (the predecessor of the current Business Retention Act) because the tower was ordinarily intended to be affixed permanently to real property. The appellate court made clear that it was not ruling on the trial judge’s alternative holding that the “tower and its foundation constituted a ‘unitary improvement to real estate’ and the ‘metal superstructure was never ‘goods and chattels’ or ‘machinery,’ or ‘equipment’ that was attached to real estate.’” Id. at 534-35, 553 A.2d 1368. The court noted that there were arguments to be made on both sides and concluded that there was “no pressing need to enter this thicket and resolve [the] question here.” Id. at 535, 553 A.2d 1368. Similarly in R.C. *98 Maxwell Co. v. Galloway Tp., 13 N.J.Tax 519 (Tax 1993), certif. granted (July 6, 1995) in affirming the Tax Court’s conclusion that billboards constituted real property because they were ordinarily intended to be affixed permanently to real property, the Appellate Division declined to rule on the issue of whether billboards were also taxable as improvements to real property. The Tax Court followed a similar approach in Emmis Broadcasting Corp. v. East Rutherford, 14 N.J.Tax 524, 536 (Tax 1995). As in NYT Cable, R.C. Maxwell Co., and Emmis Broadcasting, I need not determine whether the insulated walls and ceilings constitute improvements to real property because the issue may be readily resolved by viewing the panels as personal property affixed to real property-
Defendant taxpayer has two opportunities to establish that the walls and ceilings of the refrigerated areas, when viewed as personal property attached to real property, are nevertheless not taxable as realty. First, taxpayer may establish that the property in question can be removed without materially injuring itself or the realty and is not ordinarily intended to be affixed permanently to the realty. Second, if the property in question is machinery, apparatus, or equipment used in business, defendant taxpayer may establish that the property is not taxable because it is not a structure or does not have as its primary purpose enabling a structure to support, contain, enclose or house persons or property.
There is no dispute that the insulated walls and ceilings can be removed without material injury either to the wall panels themselves or to the realty. It is quite apparent from the cam-locks that join each panel that the panels can be easily assembled and disassembled with a wrench and that no injury will result to the panels themselves when they are disassembled. Similarly, the fact that the panels are bolted to the floors with L joints and are clipped tp the roof girders with steel bars and clamps establishes that the panels may be removed without material injury to the real property.
*99 The dispute between the parties centers around whether the panels are ordinarily intended to be affixed permanently to the real estate. Defendant taxpayer’s evidence on this point included the fact that approximately seventy-five percent of the wall and ceiling panels had been moved from the taxpayer’s prior location in Holmdel and reassembled at the Freehold site. Moreover, according to taxpayer’s director of operations, during the course of his employment, he had received offers for “used refrigeration space,” meaning, I presume, insulated wall and ceiling panels. Other evidence on this point included the evident ease with which the insulated panels can be assembled and disassembled.
On the other hand, with the possible exception of the implication that used refrigeration space is bought and sold, there was no evidence as to what is ordinarily intended with respect to moving refrigerated warehouse areas. As made clear in NYT Cable TV v. Borough of Audubon, supra, 230 N.J.Super, at 534, 553 A.2d 1368, the test to determine what is ordinarily intended is an objective one rather than an assessment of what was subjectively intended with respect to the particular property at issue. The question is whether the outward appearance of the property and other objective manifestations establish that the property is not ordinarily intended to be permanently affixed. Chevron U.S.A, Inc. v. City of Perth Amboy, 9 N.J.Tax 205, 243 (Tax 1987).
The outward appearance of the property at issue is that of walls and ceilings faced with metal, which, like other walls and ceilings, are intended to be affixed permanently to the real property to which they are attached. The fact that this particular warehouse was, in large part, formerly located at a different site does not establish ordinary intent in the trade. See N.J.AC. 18:12-10.1. The testimony of taxpayer’s on-site director of operations that he had received offers for used insulated panels falls short of establishing what is ordinarily intended once a refrigerated space within a warehouse is built. In particular, there was no testimony or other evidence to suggest that a warehouse owner would dismantle and move a profitable refrigerated warehouse *100 once the space had been constructed and was in operation. There was no testimony as to the frequency with which refrigerated warehouses are dismantled and moved or the conditions that prompt such moves. See N.J.AC. 18:12-10.1. Nor was there definite, detailed testimony as to the frequency with which used insulated wall and ceiling panels are resold. See id.
In short, defendant taxpayer failed to produce sufficient evidence to establish that the insulated walls and ceilings are “not ordinarily intended to be affixed permanently to real property.”
Whether the walls and ceiling panels may escape taxation as real property under subsection (b) of N.J.SA 54:4-1 depends preliminarily upon whether they constitute machinery, apparatus, or equipment used in business. Defendant taxpayer maintains that the panels constitute machinery, apparatus, or equipment because their primary purpose is to refrigerate beer. According to taxpayer, as defined in N.J.AC. 18:12-10.1, machinery, apparatus, or equipment includes “tangible personal property used or held for use in business,” and it is undisputed that the wall and ceiling panels constitute tangible personal property used in business. The township responds that the primary purpose of the panels is not to refrigerate beer but to segregate beer that requires refrigeration from other areas of the warehouse. There was no dispute that the property at issue is used in business.
Initially, it should be pointed out that the portion of the regulatory definition of machinery, apparatus, or equipment relied upon by taxpayer was incorporated into the statute itself by the Business Retention Act. L.1992, c. 24 § 4. Both N.J.S.A. 54:4-1.15 and N.J.A.C. 18:12-10.1 define machinery, apparatus, or equipment to mean “any machine, device, mechanism, instrument, tool, tank or item of tangible personal property used or held for use in business.”
The difficulty with taxpayer’s argument that the walls and ceilings are exempt as “item[s] of tangible personal property used in business” is that the proposed construction would expand the class of specific items listed in the definition of machinery, *101 apparatus, or equipment in violation of the rule of ejusdem generis. “Under this rule, when general words follow specific words in a statutory enumeration, the general words are construed to embrace only the objects similar in nature to those objects enumerated by the preceding specific words.” Sutherland, Statutory Construction § 47.17 (4th ed. 1985). See Denbo v. Moorestown Tp., 23 N.J. 476, 482, 129 A.2d 710 (1957). Thus, in Denbo our Supreme Court held that under the ejusdem generis principle a provision in the Municipal Home Rule Act of 1917 permitting the enactment of municipal ordinances regulating the use, storage, and sale of inflammable materials and providing “for the protection of life and property from fire, explosions and other dangers,” did not authorize the denial of a zoning permit for a gas station on the ground that it would increase traffic congestion. The words “other dangers” in the enabling legislation were limited to dangers similar in nature to fires and explosions and could not be extended to dangers resulting from increased traffic. Denbo, supra, 23 N.J. at 478-83, 129 A.2d 710. When the principle of ejusdem generis is applied here, it is clear that the very general words “item of tangible personal property used or held for use in business” must be limited to property similar in nature to the preceding specific types of property, namely machines, devices, mechanisms, instruments, tools, and tanks.
Alternatively, taxpayer maintains that the insulated walls and ceilings constitute “instruments” that cool the refrigerated areas.
“Words in a statute are to be given their ordinary and primary meaning unless there is an explicit indication of a special meaning to be attached to the words.” Taylor v. Lower Tp., 13 N.J.Tax 371, 380 (Tax 1993) (citations omitted). As neither the statute nor regulations define the word “instrument,” the ordinary dictionary meaning should apply.
The word “instrument”, as defined in Webster’s Seventh New Collegiate Dictionary (1971), has both an abstract meaning and a more specific, physical one. In its abstract sense, an instrument is a “means whereby something is achieved, per *102 formed, or furthered.” In its more specific, physical sense, the word is defined as a tool, utensil, or implement. Under the maxim of statutory construction noscitur a sociis, it is clear that the word “instrument” is used in its specific sense in N.J.S.A 54:4-1. Under that maxim “the meaning of words may be indicated and controlled by those with which they are associated.” Germann v. Matriss, 55 N.J. 193, 220-21, 260 A.2d 825 (1970) (citations omitted). The associated words here are “machine, device, [and] mechanism.” It is thus apparent that the word “instrument” is used in its physical sense to mean a tool, utensil, or implement that is akin to a machine, device, or mechanism.
The question then becomes whether the insulated walls and ceilings can be viewed as tools, utensils, or implements that are akin to machines, devices, or mechanisms. Webster’s Seventh New Collegiate Dictionary defines the word “tool” as “an instrument (as a hammer) used or worked by hand: implement;” “Utensil” is defined in the same dictionary as “a useful tool or implement.” Finally, “implement” is defined as a “tool, utensil, instrument.” In discussing the three words under the definition of “implement,” the same dictionary includes the following explanation:
IMPLEMENT, TOOL, INSTRUMENT, APPLIANCE. UTENSIL applied to any relatively simple device for performing work. IMPLEMENT may apply to anything necessary to effect an end: TOOL suggests an implement adapted to facilitate a definite kind or stage of work and suggests the need of skill more strongly than IMPLEMENT: ... UTENSIL applies to a device used in domestic work or some routine unskilled activity.

[Webster's, supra].

The words with which “instrument” is associated in the statute in turn are defined as follows. The pertinent definition of “machine” is “an assemblage of parts that transmit forces, motion, and energy one to another in a predetermined manner ... an instrument (as a lever) designed to transmit or modify the application of power, force, or motion.” Webster’s, supra. The applicable definition of “device” is “a piece of equipment or mechanism designed to serve a special purpose or perform a special function.” Webster’s, supra. “Mechanism” is pertinently defined as “a piece of machinery” Webster’s, supra. Finally, “machinery” is defined as “machines in general or as a functioning unit.” Webster’s, supra.
*103 The insulated walls and ceilings in the taxpayer’s warehouse do not qualify as “instruments” under the pertinent definition of that word as a tool, utensil, or implement. The walls and ceilings are not, themselves, a simple device for performing work. The walls and ceilings do not themselves perform any work. They simply contain cooled air and prevent its escape. When viewed in conjunction with the associated words “machine, device, [and] mechanism,” it is clear that, as used in N.J.S.A. 54:4-1.15, the word “instrument” means tangible personal property in the nature of a machine that transmits forces, motion, and energy. Taxpayer’s arguments to the contrary notwithstanding, the insulated walls and ceilings do not create or transmit refrigerated air. That function is performed by the compressors and blowers. The walls and ceilings are passive. They simply maintain the temperature created and transmitted by the compressors and blowers. They differ only in degree and efficiency from insulated interior walls and dropped ceilings found in any modern building.
Even if it could be concluded that the insulated walls and ceilings do constitute machinery, apparatus, or equipment, it is clear that they are “structures” and thus taxable as real property. N.J.S.A. 54:4-1.15 defines a “structure” as “any assemblage of building or construction materials fixed in place for the primary purpose of supporting, sheltering, containing, enclosing or housing persons or property.”[2] The primary purpose of the insulated walls and ceilings is to contain or enclose refrigerated beer. Again, the walls and ceilings of the refrigerated space are not themselves the active forces that cool the beer. Absent the compressors, blowers, electrical fittings, etc., the insulated walls would be incapable of cooling the beer.
Since the insulated walls and ceilings do not constitute machinery, apparatus, or equipment as defined in N.J.S.A. 54:4-1.15 and N.J.A.C. 18:12-10.1, or, if they do constitute machinery, apparatus, or equipment, they nevertheless qualify as “structures,” the insu *104 lated walls and ceilings do not escape local property taxation under subsection (b) of N.J.S.A. 54:4-1.
On the other hand, the compressors and blowers do escape taxation under subsection (b). Although taxpayer’s evidence concerning the compressors and blowers was slim, it appears from the testimony of taxpayer’s witnesses that the function of the compressors and blowers is to cool the beer. Moreover, the township’s photos corroborate the nature of the compressors and blowers as discrete items of machinery attached to the warehouse walls or foundations. The township concedes that these items constitute machinery, apparatus, or equipment but asserts that their primary purpose is to enable a structure, i.e., the insulated walls and ceilings, to contain or enclose the refrigerated beer. I disagree. The primary purpose of the compressors and blowers is not to contain, enclose, or house the beer. Rather, their primary purpose is to actually cool it. The warehouse structure, including the interior areas created by the insulated panels, would be perfectly capable of containing and housing the beer without the compressors and blowers.
My conclusion with respect to the compressors and blowers is based in part on the stated purpose of the Business Retention Act to eliminate from local property taxation certain machinery, apparatus, or equipment that became taxable locally as a result of certain Tax Court decisions. One of these was Texas Eastern Transmission Corp. v. Division of Taxation, 11 N.J.Tax 198 (Tax 1990), and among the items of tangible personal property affixed to realty in Texas Eastern were compressors used in moving gas through Texas Eastern’s pipeline. The Tax Court held that all the components that were necessary for the operation of the pipeline which were constructed as part of the pipeline, were realty. Id. at 207. In reaching that conclusion, the court relied on the then existing definition of taxable machinery, apparatus, or equipment in Chapter 117 of the Laws of 1986 and found that the compressors and related items were “functionally essential” to the operation of the pipeline. Id. at 209-10.
*105 Were it not for the amendment to N.J.S.A. 54:4 — 1(b) accomplished by the Business Retention Act, L.1992, c. 24 § 1, the compressors in this case, like the compressors in Texas Eastern, would likely be viewed as realty because they appear to be “functionally essential” to the operation of the refrigerated warehouse. However, the Business Retention Act eliminated from subsection (b) the “functionally essential” language which had been inserted by Chapter 117 and substituted in its place the requirement that the “primary purpose” of the machinery must be to “enable a structure to ... contain, enclose or house persons or property” in order for the machinery or apparatus to be taxable as realty. Viewed in the context of the purpose of the Business Retention Act and the change in the statutory language, compressors and blowers whose primary purpose is to make operational the refrigerated portions of a warehouse are not taxable as real property.
I realize that there is a fine line between the blowers and compressors at issue here and central heating and air conditioning systems that are viewed as taxable real property under the Business Retention Act. Thus, the Statement of the Senate Budget and Appropriations Committee to S. 332, which was enacted as the Business Retention Act, includes the following language: “Examples of machinery, apparatus or equipment which enable a structure to house persons or property, and which are therefore locally taxable, include central heating or air conditioning systems____” One distinction is that the primary purpose of central heating and air conditioning is to enable a structure to carry out its basic function of housing persons and property, while compressors and blowers used in a refrigerated warehouse have as their primary purpose the operation of the warehouse business. The function of the compressors and blowers is to further plaintiffs business, specifically the sale of cold beer. Plaintiff would have no need for such equipment were it not in the business of distributing cold beer. Thus, the equipment serves a unique business purpose and is distinguishable from a heating or air *106 conditioning system that makes a modern building habitable for general use.[3]
In sum, the insulated walls and ceilings in taxpayer’s warehouse are taxable real property. The blowers and compressors that cool the refrigerated space are nontaxable personal property attached to real property.
The court will enter an appropriate order. There will be a telephone conference call to schedule an exchange of appraisal reports and a hearing on valuation.

 It is possible that the insulated walls and ceilings are “improvements,” in which case they would be classified as realty with no opportunity on the part of the taxpayer to show otherwise. Emmis Broadcasting Corp. v. Borough of East Rutherford, 14 N.J.Tax 524, 536 (Tax 1995). As pointed out below, in this case it is unnecessary to decide the issue.

 N.J.A.C. 18:12-10.1 contains the identical definition of "structure” except that the words "or housing” are omitted.

 Having concluded that the compressors and blowers are not taxable real property under subsection ft)), I need not consider whether they also escape taxation under subsection (a).