Argued and submitted February 20, reversed and remanded for further proceedings April 13, reconsideration denied May 28, petition for review denied June 30, 1981 (291 Or 151)

**JOHNSON,**
*Appellant,*

*v.*

**HICKS et al,**
*Respondents.*

(No. 79-538 E, CA 17962)

626 P2d 938

Thomas Lloyd, Ashland, filed the brief for appellant.

Richard C. Whitlock, Klamath Falls, argued the cause for respondents. With him on the brief was Beddoe & Whitlock, Klamath Falls.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

**ROBERTS, J.**

This is a suit in equity for a mandatory injunction. Plaintiff seeks to require defendants to restore an irrigation line to its original position on her property and to refrain from further interference with it. She also seeks $10,000 general damages.[1] Defendants Hicks counterclaim, seeking compensation from plaintiff for her use of the system. The trial court found plaintiff had not proven her right to use of the irrigation system and dismissed all claims. Our review is *de novo.*[2] We reverse and remand.

The record is replete with indications that this suit arises at least partially from personal animosities. Ronald Dean Johnson, one of the four defendants, is the brother of plaintiff's former husband Hoy Johnson; defendant Maxine Hicks, wife of defendant Neil Hicks, is Hoy Johnson's sister.[3] The property of the Ronald Johnsons and the Hickses abuts plaintiff's on two sides, and the disputed irrigation line runs along that boundary. The facts of the dispute are as follows.

In 1964, plaintiff's former husband and defendant Neil Hicks, his brother-in-law, installed an irrigation system to serve land belonging to plaintiff and her husband and land belonging to defendants Hicks. Costs of installation were divided equally between the two men and labor was shared. The system contained approximately 700 feet of two-inch pipe which, besides crossing property owned by plaintiff and Hoy Johnson, ran along the edge of property owned by Ronald Johnson and defendants Hicks. In addition, the system included 1,500 feet of "moveable" aluminum pipe used to irrigate the pasture owned by plaintiff and her husband.[4] Plaintiff's former husband testified the system was "probably three-fourths underground," but the portion on what later became his wife's

---

[1] Plaintiff's complaint sought damages of $10,000 for the loss of irrigation water, $5,000 damages for encroachment by a new fence installed by defendants Hicks, and $15,000 punitive damages. The claim for punitive damages and that for $5,000 damages for the construction of the fence were withdrawn by stipulation before trial.

[2] ORS 19.125(3).

[3] Hoy Johnson is not a party to this suit.

[4] Rights to this portion of the irrigation system are not disputed.

property was above ground.[5] After the pipe was installed, maintenance costs were split 50-50 between the two men, as was the cost of the electricity to run the system's water pump.

Plaintiff's former husband testified that his purpose in installing the system was to irrigate the pastureland, on which they apparently raised steers and horses.[6] Mr. Hicks testified he wanted the system to irrigate his yard. Plaintiff's former husband testified the installation was to be permanent and that when he sold the pastureland, he "let the sprinkler system go with it."

On April 1, 1967, at a time when plaintiff and Hoy Johnson were experiencing marital problems, he and Neil Hicks entered into an agreement declaring the irrigation system — which included a five-horsepower pump motor and pump house not located on plaintiff's property, and the 700 feet of pipe — to be their joint property and declaring "* * * upon the death or incapacity of either of the parties hereto that the property shall be in the ownership and control of the surviving party." Hicks testified that their intent in drawing up the agreement was as follows:

> "Well, at the time we made it up Hoy was the one—I told Hoy we were going to have trouble because—if something happened to him and she was involved in it. You know, we can't get along with her to begin with and he said that he can see our point and that we'll go to a lawyer and have him write this paper up, you know in case something happened to him or to myself and there wouldn't be no women involved into it."[7]

In 1969, plaintiff and Hoy Johnson were divorced. By a decree dated October 29, 1969, she was awarded the

---

[5] Plaintiff's witnesses testified the portion of the irrigation pipe on her property was buried one to one-and-one-half feet in the ground; her former husband and the defendants testified the pipe rested on top of her property. Though there was much dispute over this issue, and the damage to plaintiff's property caused by the pipe's removal, injury to the land caused by removal of the chattel is not dispositive of its status as a fixture. *See Roseburg Nat. Bank v. Camp*, 89 Or 67, 75, 173 P 313 (1918).

[6] Plaintiff's former husband said the cost to install the system solely to water the yard around the house would have been prohibitive, and he never would have done it for that purpose alone.

[7] This agreement was witnessed by Neil Hicks' wife Maxine and Pansy Johnson, the mother of Maxine, Hoy and Ronald.

family home and the one-third of an acre on which it was located, her personal property and all furniture and fixtures in the home. Hoy Johnson was awarded two other parcels of land and all other personal property. No disposition was made of the irrigation system. From 1969 until April of 1979, a portion of the irrigation pipe remained on her property, and plaintiff continued to use the water from the system for watering her yard and trees. During this time she neither offered nor was asked to contribute to the expense of operating the system: her ex-husband and Neil Hicks continued to split costs for electricity, repairs and maintenance.[8] Her former husband testified he let her keep using the water because the amount she used was negligible and he had no objection to it. He said Neil Hicks suggested they "cut her off," but he refused. On April 1, 1979, Neil Hicks entered plaintiff's property and moved some 140 feet of irrigation pipe, which was on her property, approximately six feet to the west and north, placing it on his property and on that owned by defendants Ronald and Teresa Johnson, thereby depriving plaintiff of access to water from the county irrigation system. This suit ensued.

Plaintiff's claim of right is by reason of the divorce decree. She maintains that the portion of the irrigation system placed upon her property passed to her as part of the real property settlement because it was a fixture upon the land. In *First State etc. Bank v. Oliver et al,* 101 Or 42, 198 P 920 (1921), another suit from Klamath County involving an irrigation system and determining that the system was

---

[8] Though plaintiff never paid for maintenance on the system, she paid an assessment to the Klamath Basin Improvement District for the right to use the irrigation water. The parties stipulated that the assessment was based on acreage served by the system and not by amount of water consumed and that the water right thus established belongs to the land. In 1964 the Johnson parcels were enrolled in the district in both their names. In 1975, the names listed on the "Water Users Ledger" for their property were changed. Only Hoy Johnson was listed for the two larger parcels he received in the 1969 divorce decree and only plaintiff was listed for her one-third acre. In 1978, there was a notation on the ledger for her property that Hoy Johnson was receiving a benefit from 0.01 acre of that portion of the property. Though Hoy Johnson testified he believed he was paying the water assessment for plaintiff's land as well as his own, plaintiff testified she had received and paid bills from the irrigation district since 1969. Her name was on the rolls for that piece of property continuously since 1964. She paid the 1979-80 tax statement for the irrigation water as well.

a fixture, the Supreme Court set forth the test for determining whether an article on the land is part of the realty or personal property:

"In deciding whether an article used in connection with real property should be considered as a fixture and a part and parcel of the land, as between a grantor and a grantee or mortgagor and mortgagee, the usual tests are: (1) real or constructive annexation of the article to the realty; (2) appropriation or adaptation to the use or purposes of the realty with which it is connected; (3) the intention to make the annexation permanent." 101 Or at 48.

*See also, Metropolitan Life Insurance Co. v. Kimball,* 163 Or 31, 94 P2d 1101 (1939); *Roseburg Nat. Bank v. Camp,* 89 Or 67, 173 P 313 (1918).

The court went on to say:

"The intention of making the article permanently accessory to the real property is to be inferred from the nature of the article, the relation of the party making or maintaining the annexation, the policy of the law in relation thereto, the structure and mode of annexation, and the purpose and use for which it is made: 19 Cyc 1039; *Bay City Land Co. v. Craig,* 72 Or 44 (143 Pac. 911); *Johnson v. Pacific Land Co.,* 84 Or 356, 361, (164 Pac. 564); *Roseburg Nat. Bank v. Camp,* 89 Or 67, 74 (173 Pac. 313); *Blake-McFall Co. v.Wilson,* 98 Or 626 (193 Pac. 902).
"* * * * *

"It is the trend of judicial opinion to regard all of those things as fixtures which have been attached, whether physically or constructively to the realty with a view to the purposes for which the real property is held or employed, however slight or temporary the connection between the articles and the land. The important element to be considered is the intention of the party making the annexation. Neither the intention existing at the time of procuring the article nor that which exists while the same is being transported to the real property where it is designed to be placed, nor the secret plan in the mind of the person making the annexation govern. The controlling intention is that which the law deduces from all of the circumstances of the installation of the article upon the land: *Roseburg National Bank v. Camp, supra,* and cases there cited." 101 Or at 49-50.[9]

---

[9] *Roseburg* noted, 89 Or at 77: "When additions are made to the land by the owner the purpose is usually to enhance the value and be permanent * * *."

Cases since *First State etc. Bank* have emphasized intent at the time of the attachment of the item to the real property as the controlling factor. *Marsh v. Boring Furs, Inc.,* 275 Or 579, 551 P2d 1053 (1976); *Waldorf v. Elliott,* 214 Or 437, 330 P2d 355 (1958); *Dunn v. Assets Realization Co.,* 141 Or 298, 16 P2d 370 (1933); *Far West v. Proaps,* 43 Or App 881, 604 P2d 452, *rev den* (1979).

■ In this case we have the intent of both defendant Neil Hicks and plaintiff's former husband to consider, as well as their April 1, 1967 agreement, which purports to formalize their intent. A written agreement that a chattel already annexed to the soil shall be termed personalty, however, is binding only upon the parties to the agreement and those having notice. *Blehm v. Ringering,* 260 Or 46, 488 P2d 798 (1971); *Mattechek v. Pugh,* 153 Or 1, 55 P2d 730 (1935). Plaintiff had no knowledge of the 1967 agreement. We therefore have to determine the intent of plaintiff's former husband and Neil Hicks with respect to the permanency of the pipe at the time of its installation in 1964. The Supreme Court also said in *First State etc. Bank:*

> "Applying these rules to all the facts and circumstances in the present case, we note that it is apparent that Mr. Reames, or whoever installed the irrigation system on the farm, did so with a view to enhancing the production of the farm, to increase the growth of vegetation thereon. Irrigation in a semiarid region, like parts of Klamath County, is the very life of the land. It is beyond comprehension that the system was installed for any temporary purpose.
>
> "* * * * *
>
> "From the nature of the irrigation system constructed on the farm, the relation and situation of the owner who installed the apparatus, the whole surroundings and mode of the annexation, the evident purpose thereof, and all the facts disclosed by the testimony, we conclude that the owner making the connection and maintaining the system for a long time did so with the intention of making the system accessory to the real estate." 101 Or at 51-52.[10]

We infer Mr. Hicks' intent to be that the system they installed would be used to provide water for the two

---

[10] *Cf. Roseburg Nat. Bank v. Camp, supra,* finding that a water system for placer mining was not a fixture because when the site had been mined out the pipe would be removed.

properties for so long the Johnsons remained in possession of their parcel. We think it obvious that if Hoy Johnson had remained in possession of the entire three-acre parcel, he would have viewed the irrigation system as a permanent accessory, increasing the value and use of the property. That the parcel of land was later, in effect, subdivided, makes no difference as to his intention at the time of installation or in the status of the pipe at the present time. Further, Mr. Johnson said he had always been content to let plaintiff use the water and had resisted attempts to remove her supply.

■ It is important to note that we are not here determining water rights of any kind, but only plaintiff's right to continued possession of the irrigation pipe which had been on her property for 15 years and for 10 years in her exclusive possession. We find the pipe installed on plaintiff's property was a fixture and that defendants' removal of the pipe and subsequent possession wrongfully interfered with her rights. The trial court's order denying the mandatory injunction is therefore reversed. The injunction should issue on remand.

We remand to the trial court on the issue of damages. The only evidence in the record is that by the time of trial plaintiff had suffered some $870 in damages to trees, shrubs and lawn on her property due to lack of water after the removal of the irrigation pipe. There is also evidence, however, that there was city water available to her but that she had this hookup removed. We therefore remand to the trial court to ascertain the actual damage to plaintiff's property, and whether she could have mitigated these damages. We express no opinion on defendant Hicks' right to recover for contribution to the repair and maintenance of the system, since, because of the disposition of the case, no evidence was taken on this issue.

Reversed and remanded for further proceedings consistent with this opinion.