HOPKINS, J.T.C.
Plaintiff (taxpayer) has appealed from a determination by the Director, Division of Taxation, that it is liable for sales taxes for the period ending June 30, 1982. That determination was based upon the finding that the process by which taxpayer obtained new engravings on printing rollers constituted taxable transactions and, further, that purchases of parts for silk screens used in the taxpayer’s manufacturing business were subject to sales taxes.
Taxpayer contends that the process by which new engravings were placed on printing rollers constituted a purchase of a copper sleeve and chrome coating which qualified as a purchase of machinery or equipment used directly and primarily in a manufacturing process and was thus exempt. Taxpayer further claims that the parts of the silk screens were also exempt since the silk screens constituted exempt equipment used in its manufacturing process.
For the years at issue, N.J.S.A. 54:32B-3(b)(l) imposed a tax on the following services:
Producing, fabricating, processing, printing or imprinting tangible personal property, performed for a person who directly or indirectly furnishes the tangible personal property, not purchased by him for resale, upon which such services are performed.
*467 Further, N.J.S.A. 54:32B-8.13[1] exempts:
a. Sales of machinery, apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining;
The exemptions granted in this section shall not apply to motor vehicles or to parts with a useful life of 1 year or less or tools or supplies used in connection with the machinery, equipment or apparatus described in this section.
Regulations promulgated under the Sales and Use Tax Act define the terms used in N.J.S.A. 54:32B-8.13. In pertinent part, N.J.A.C. 18:24-4.2 states:
“Machinery, apparatus, or equipment” means any complex, mechanical, electrical or electronic device, mechanism or instrument which is adapted to the accomplishment of a production process, and which is designed to be used, and is used, in manufacturing, converting, processing, fabricating, assembling, or refining tangible personal property for sale.
“Manufacturing or processing” means the performance of an operation or series of operations, the object of which is to place items of tangible personal property in a form, composition, or character different from that in which they were acquired. The change in form, composition, or character must be a substantial change, and it must result in a transformation of property into a different or substantially more usable product.
“Part” means an item used as a replacement for any portion of a machine and which is attached or affixed to the machine of which it is a part permanently or during periods of use. A part cannot accomplish the work for which it was designed independent of the machine of which it is intended to be a component.
Lastly, N.J.S.A. 54:32B-2(e) defines retail sale as “A sale of tangible personal property to any person for any purpose____” Tangible personal property is defined in N.J.S.A. 54:32B-2(g) as “[c]orporeal personal property of any nature.”
Taxpayer is engaged in the business of manufacturing and selling wall coverings and plastic products. All such wall coverings are imprinted by use of either a steel roller or a silk screen process.
*468 The steel rollers, without any copper coating, initially weigh from 75 to 125 pounds depending upon the length. A copper coating adds approximately ten pounds to the weight. Designs are placed on the copper surface which is then finished with chrome plating to prevent wear. The rollers are inserted into a large printing machine where they are used to produce the finished wall covering.
When taxpayer wishes to replace the designs on the rollers, it sends them to an independent contractor who removes the old design and replaces it with a new design. That contractor, or engraver, first removes all the chrome and copper outer coating from the roller by using a lathe. The engraver retains the scraps. The roller is then coated with a new copper surface through an electrolytic process. That coating is approximately Vs inch thick. The copper coating must be precisely measured since the circumference of the finished roller must be exactly 18 inches, the standard length of a design run on wall coverings.
After the copper surface is finished and polished, a photo emulsion is applied to the roller. The procedure is similar to making photographic paper light sensitive. A photocopying machine transfers the picture from a film onto the surface of the roller which is then developed in a developing tank. The film represents an engraving pattern owned by taxpayer and supplied to the engraver. After development, dye is applied to the roller and, subsequently, the engraving pattern becomes visible. The bare copper surface is the substance of the pattern since the nonprinting areas are covered by a photo-resist. The roller is then cleaned in preparation for the etching process in which acid is applied and the printing area created. Finally a layer of chrome is added to protect the etching and prolong the useful life of the roller. After polishing, the engraving process is finished.
At issue is whether the services performed by the engraver are engraving services which are subject to sales tax pursuant to N.J.S.A. 54:32B — 3(b)(1) or, as contended by taxpayer, wheth *469 er the substance of the transaction is the purchase of an imprinted copper sleeve which would be exempt under N.J.S.A. 54:32B-8.13(a).
Both parties recognize that grants of exemption from taxation are most strongly construed against those claiming such. Bloomfield v. Acad. of Medicine of N.J., 47 N.J. 358, 363, 221 A.2d 15 (1966); Mal Bros. Contracting Co. v. Taxation Div. Director, 124 N.J.Super. 55, 61, 304 A.2d 750 (App. Div.1973), certif. den. 63 N.J. 554, 310 A.2d 469 (1973).
An analysis of the transaction under review shows that taxpayer owned the rollers at all times during the process. When the engraver obtained possession of the rollers for the purpose of removing the old design and refurbishing them with a new design, a necessary corollary was rebuilding the roller with a copper coating so that not only could the new design be placed on the copper facing, but also to have the finished rollers be exactly 18 inches in circumference.
While there is no evidence showing a base charge for the copper, it is obvious that the electrolytic process by which the copper became part of the rollers constituted the major cost of the copper coating process. In becoming part of a roller, it provided the base for the design.
The finding that the electrolytic process resulted in the copper becoming part of the roller effectively disposes of taxpayer’s argument that the transaction involved the purchase of an imprinted copper sleeve. No design was imprinted until after the copper became part of the roller. The design was imprinted on a copper coated roller owned by taxpayer rather than on a copper sleeve which the engraver attached to the roller.
Both parties, on brief, recognize the precedential value of Allied Textile Printers v. Taxation Div. Director, 145 N.J.Super. 456, 368 A.2d 375 (App.Div.1976). That case involved a similar type roller used for imprinting a design on textiles. There, too, one of the issues was whether the process by which *470 a new design was imprinted on the roller was an imprinting process subject to a sales tax. The imposition of the tax was upheld.
The only distinction between the rollers in the Allied case and the subject rollers was the requirement that the subject finished rollers were always 18 inches in circumference. Rollers for textile imprinting did not have that requirement and, accordingly, did not require the added copper coating when the old copper was removed to change the design. The textile rollers were constructed with a sufficient copper coating to permit the addition of new designs merely by removing the old design which reduced the copper exterior by approximately Vs inch.
The above distinction between design rollers for textile use and those for wall covering use is not controlling. The addition of the Vs-inch copper exterior to the wall covering rollers was a process required to maintain the standard 18-inch circumference in such rollers. The standard circumference and the re-use for different designs were recognized in the basic construction of the rollers. The copper, as well as the chrome plating, while not inconsequential, were still only component elements added to the rollers in the design imprinting process. Thus, the procedure by which new designs were placed on printing rollers constitutes a service which is subject to tax pursuant to N.J.S.A. 54:32B-3(b)(l).
In addition to the rollers, taxpayer also utilizes “silk screens” to imprint wall coverings. Silk screen printing is a stencil process in which coloring matter is forced through the mesh of dacron-rayon material in order to create a design on the base wall coverings.
In contesting Director’s determination that the purchases of parts for the silk screens were taxable, taxpayer relies upon N.J.S.A. 54:32B-8.13, which, in exempting “machinery, apparatus or equipment,” provides that the exemption granted shall not apply to “parts with a useful life of one year or less.” The parts here involved have a useful life of more than one year.
*471 A silk screen is made of a dacron-rayon material that is stretched over a metal or wood frame to which it is attached by either adhesive or staples. Taxpayer purchases the components of a screen from various suppliers and assembles the silk screens. A separate screen is made for each color in the design by a photographic development process. A clear plastic film is then placed over the screen. The overall design is reproduced on the plastic film. That film is then placed over a light source. The screen is coated with a light-sensitive photo emulsion solution and placed on top of the design so that three layers result, i.e., the light source on the bottom, next the clear film with the design and the treated screen on top. When the light is turned on, the light passes through the clear film except where it is blocked by the design. The illumination hardens the light-sensitive material where there is no design. The nonhardened area on top of the design is then washed off. Colored ink is pressed through the open portion of the screen to put a pattern on top of the material that is being printed. Using a different screen for each color, a design is printed on a base wall covering which has been stretched over a long wooden table during the process.
On the basis of the above, taxpayer alleges that a silk screen qualifies as apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing. Accepting the definition of “apparatus or equipment,” as detailed in N.J.A.C. 18:24-4.2, such silk screen is concluded to be a “complex ... instrument which is adapted to the accomplishment of a production process, and which is designed to be used, and is used, in ... processing ... tangible personal property for sale.” As such, its sale would be tax exempt.
While the purchase of a silk screen would qualify for a sales tax exemption, the question here is whether certain of its components qualify for the same exemption.
It is well settled that a clear and unambiguous statute is not open to interpretation or construction. In re Jamesburg *472 High School Closing, 83 N.J. 540, 416 A.2d 896 (1980); Watt v. Franklin, 21 N.J. 274, 121 A.2d 499 (1956); Feld v. Taxation Div. Director, 3 N.J.Tax 476 (Tax Ct.1981).
The subject conflict arises when the regulation which defines the term “part” is read without proper reference to N.J.S.A. 54:32B-8.13, the exemption statute. That statute grants a sales tax exemption to qualified machinery, apparatus or equipment. It further denies such exemption to “parts having a useful life of one year or less____” As such, it does not, by implication, expand the class to which the exemption applies, i.e., to parts. Rather, it denies the exemption to parts which, except for their limited useful life, could otherwise be exempt as qualified machinery, apparatus or equipment.
The conclusion that parts can be exempt as machinery, apparatus or equipment is based on the accepted definition of such words.
Words in a statute are to be given their ordinary and primary meaning unless there is an explicit indication of a special meaning to be attached to the words. International Flavors & Fragrances, Inc. v. Taxation Div. Director, 5 N.J.Tax 617 (Tax Ct.1983), aff’d 7 N.J.Tax 652 (App.Div.1984), aff’d 102 N.J. 210, 507 A.2d 700 (1986).
Webster’s New Collegiate Dictionary (1979) defines machinery as:
1 a: machines in general or as a functioning unit ...
b: the working parts of a machine 2: the means by which something is kept in action or a desired result is obtained, [at 682]
Apparatus is defined as:
1 a: a set of materials or equipment designed for a particular use b: an instrument or appliance designed for a specific operation c: a group of organs having a common function 2: the functional machinery by which a systematized activity is carried out____ [Id. at 54]
Equipment is defined as:
1 a: the equipping of a person or thing b: the state of being equipped 1 a: the set of articles or physical resources serving to equip a person or thing: as (1) the implements used in an operation or activity; APPARATUS ... (b) a piece of such equipment____ [Id. at 383]
*473 The above definitions show that “machinery” includes the working parts of a machine, “equipment” includes “implements” used in an operation and “apparatus” is considered a synonymous cross-reference to equipment.
It is, accordingly, concluded that “machinery, apparatus or equipment” include the parts of a unit which performs the required function.
The remaining question is whether they are exempt under the general exemption grant of N.J.S.A. 54:32B-8.13, which requires that they be used or consumed “directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining____”
The evidence presented shows that both the dacron-rayon material and the framing are essential components of silk screens which are used or consumed directly in the production of wall coverings. Since it is agreed that such parts have a useful life of more than one year, they are exempt.
The parties will submit a form of judgment pursuant to R. 8:9-3.

 This exemption was codified as N.J.S.A. 54:32B-8(m) prior to the enactment of L.1980, c. 105, § 25, effective September 11, 1980.