RIMM, J.T.C.
This is a local property tax matter implicating the taxation as real property of floating docks and piers claimed to be personal property under N.J.S.A 54:4-1, as amended by the “Business Retention Act,” L.1992, c. 24. The Business Retention Act, amended L.1986, c. 117, which was the legislative response to the question whether certain property should be taxed as real properly for local property tax purposes or treated as personal property and not taxed. The case will be decided under the present form of the statute which was approved June 29, 1992 to take effect immediately. In pertinent part, the act provides that it “shall ... apply ... to all tax appeals pending at the time of the enactment *373 regardless of the tax year in question.” L.1992, c. 24, § 7. See Chevron U.S.A., Inc. v. Perth Amboy, 9 N.J.Tax 205, 221 (1987).
The subject property is designated as Block 806, Lot 4.01 CB076. For the tax year 1990, the property was assessed as follows:
Land $ 5,000
Improvements 20,600
Total $25,600.
On appeal to the Cape May County Board of Taxation, the assessment was affirmed. The taxpayer then filed a complaint in the Tax Court seeking a reduction in the improvements assessment.
The subject property is one of 170 dockominium units in the Lighthouse Pointe Marina Condominium. Plaintiffs are the owners of the unit designated as B-76 with which unit they also own 0.5576273% of the common elements of the condominium complex.
The parties have stipulated that the correct land assessment is $5,000. Plaintiffs, however, challenge the improvements assessment. They claim that the improvements assessment includes an assessment on property which is personal property, namely floating docks and floating finger piers which constitute the method of access to the actual slip, or area in which plaintiffs may keep a boat, and which slip has the above referenced block and lot designation. The parties have also stipulated that, if I conclude that all of the improvements assessed should be assessed as real property, then the improvements assessment of $20,600 is correct. The parties further stipulate that, if I conclude that a portion of the improvements assessed is personal property, then the correct assessment for the improvements as real property is $17,500. In effect, plaintiffs challenge $3,100 of the improvements assessment. No value testimony was presented.
Although the amount in dispute is small, the issue is important because plaintiffs are, in reality, attempting to challenge the method of assessment for the benefit of all of the dockominium unit owners.
*374 Title to the subject unit is in the name of plaintiffs by deed from Taylor Mills dated September 20, 1988 and recorded in the Office of the Clerk of Cape May County on September 21, 1988. The property was conveyed to Taylor Mills by Coastal Eesearch and Development Group by deed dated October 16,1987 and recorded in the Office of the Clerk of Cape May County. Plaintiffs’ title includes an undivided 0.5576273% interest in the Lighthouse Pointe Marina Condominium as set forth in the condominium master deed which was recorded in the Office of the Clerk of Cape May County on August 27,1987 in Deed Book 1705, page 758. An amendment to the master deed was recorded in the Office of the Clerk of Cape May County in Deed Book 1724, page 777. The amendment permitted a change in the number of slips, which change will be discussed hereafter.
The condominium complex consists of approximately 7.85 acres, of which most is the riparian grant area where the boat slips are located. The upland area has a frontage of approximately 898.18 feet along the easterly side of Shawcrest Eoad and approximately 1,766 feet of bulkhead along Grassy Sound, the body of water in which the boat slips are located. The site is irregular in shape. Shawcrest Eoad is a 60-foot wide paved public road which has traffic flow in two directions. The entire condominium complex consists of 170 boat slips, 10 commercial condominium units, a restaurant condominium unit, 176 parking spaces and a multi-use structure with meeting space, bathrooms, showers and other amenities. The common elements also include breakwaters, shrubbery and exterior lighting. The tax rate for 1990 is $2,852 per $100 of assessed valuation.
The condominium complex is located in the MD Marine Development zone of the township. The subject properly did not conform to the zoning requirements, and a use variance was granted by the Lower Township Board of Adjustment and the Planning Board prior to construction. In applying for the variance, the developer indicated an intention to construct docks and piers to remain in place 12 months a year. In granting the variance, the municipality imposed a condition that, while boats *375 might remain in their slips 12 months a year, no one could live on the boats from November 15 to March 1. To enforce the condition, the municipality required that there be no water service to the slips during that period of time each year.
Plaintiffs concede that the upland, the improvements on the upland and the bulkhead are real property for local property tax purposes. Plaintiffs also concede that the ramps which are attached to the bulkhead and which lead down from the upland to the floating docks are also real property. However, plaintiffs contend that the floating docks themselves and the finger piers which are attached to the floating docks are personal property for local property tax purposes and should not be assessed as real property. Plaintiffs do concede that the pilings which hold the docks and finger piers in place are real property.
There are five ramps attached to the bulkhead each of which leads from the bulkhead to a floating dock. Four of the floating docks are 308 feet long extending from the bulkhead, to which they are not attached, out into the water. One dock is 210 feet long. At the end of each dock is a T-head, at which the dock terminates. Attached to each dock, and perpendicular to it, are finger piers which divide the water area along each dock into boat slips. Some of the finger piers are 40 feet long, and some of the finger piers are 30 feet long. Plaintiffs’ slip is 40 feet long.
Plaintiffs claim that the docks and the finger piers are personal property for two reasons. First, the docks and finger piers are movable: they float, that is to say they move up and down with the ebb and flow of the tide. Secondly, the configuration of the piers can be changed, and, since the construction of the marina, there has been one reconfiguration of the pier layout as originally set forth in the master deed establishing the condominium. The master deed was amended to provide for the removal of three finger piers resulting in a change from the 173 slips in the original master deed to 170 slips, the number of slips on the assessing date.
The floating dock system at the marina is known as an Abeille Floating Marina System, a registered trademark. The docks and *376 finger piers have Iroko teak-like wooden decking; foam filled gel coated fiberglass floats; and special aluminum alloy chassis. They have dual built-in top access utility channels; a unique Lumipost utility distribution system; and an adjustable cleating system. They are engineered “to provide solutions to the strictest building code requirements.” The docks have no more than six degrees tilt from horizontal under uniform loading on one-half of the dock width. The system is designed to withstand 15 pounds a square foot of wind load on projected areas of moored boats along with one foot wave height. The main docks have one inch thick kiln-dried Iroko hardwood decking, and their vertical sides are protected by three-quarter inch thick Iroko rub rail. The finger piers are constructed of one inch thick kiln-dried Iroko hardwood decking, and their vertical sides are protected by nonmarring rigid PVC bumpers.
The decking is attached with ahúninum/stainless steel rivets. The Iroko decking is naturally decay resistant and requires no periodic treatment or dressing. Reinforced aluminum panels provide cover for the top access utility channels, and the chassis sections are constructed of MIG welded marine grade aluminum alloy extrusions. The dock sections are 20 feet in length and are connected using cable reinforced elastomer blocks which provide extraordinary strength, silent flexibility and act as built in shock absorbers to protect the system. Adjustable ten-inch east aluminum cleats are channel mounted with stainless steel bolts and self-locking nuts. Unsinkable floats, foam filled gel coated fiberglass shells, are spaced apart to permit surface water circulation and minimize the collection of debris. The system is virtually maintenance free.
The Lumipost utility distribution system is designed to provide shore utility services to boats moored at all types of piers, wharves and bulkheads. Lumipost is also a registered trademark. Such services include power, water, illumination, telephone and cable TV. Each unit is cast AS7G marine grade aluminum coated with a special linear polyester resin. Each post has a full access front panel made of anodized aluminum alloy extrusion with weather *377 proof windows for meter viewing. The translucent top cover of each post is made with high density polyethylene, ultra-violet stabilized. A 15 ampere photocell on each pole automatically activates the 25 watt A19 lamp in each post by sensing ambient light levels. The light fuse is 15 ampere, type S. Each post has dual power outlets with locking type devices for two 30 ampere, three pole, four wire (Nema L14-30) service. There are two circuit breakers for 30 ampere, two pole, 250 volt, 10,000 AIC service. The voltage range is 120/280v, single phase, three wire, to 120/240v. Each Lumipost has two. receptacles for television and telephone service connections in separate compartments. A mounting base is used to connect the water supply.
Although the docks and piers float, they are prevented from lateral movement of any kind by pilings which are driven into the floor of the body of water. Collars around the pilings are attached to the piers and the docks. The system of attachment is as follows: the docks with 40-foot finger piers are held in place by pilings at the end of each pier. The docks with 30-foot finger piers are held in place by pilings along the docks. There are no pilings at these piers.
The main advantage to a floating dock and pier system is convenience because the piers and docks rise and fall with the tide and are always at the same height with the boats in the slips for ease of access to and exiting from the boats.
At this marina, there is also a bubbling system which is used to prevent ice from forming. The docks and piers then remain in place 12 months a year. The bubbling system basically consists of a hose with holes in it that runs along the bottom of the body of water in which the marina is located. An air compressor pumps air through the hose, and air bubbles rise from the holes in the hose. When the bubbles rise, they bring warm water up from the bottom, and they cause motion in the water. Moving water does not freeze as quickly as standing water; and with warm water rising from the bottom, the water in the marina is less likely to freeze.
*378 The issue before the court is resolved by reference to N.J.S.A, 54:4-1. In pertinent part, the statute in its present form provides as follows:
Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless:
a. (1) The personal property so affixed can be removed or severed without material injury to the real property;
(2) The personal property so affixed can be removed or severed without material irqury to the personal property itself; and
(3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or
b. The personal property so affixed is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property. For purposes of this subsection, real property shall include pipe racks, and piping and electrical wiring up to the point of connections with the machinery, apparatus, or equipment of a production process as defined in this section.
This statute defines real property for the purposes of local property taxation to include not only all land and the improvements on the land but also to include personal property if it is affixed to the real property or an appurtenance to the real property unless one or the other of two alternatives apply to the personal property.
The second alternative set forth in subsection b. of the statute provides that real property shall not include personal property affixed to real property if the personal property is machinery, apparatus, or equipment. In order to determine if this alternative applies to the docks and piers in this case, rendering them not taxable as real estate, it is necessary to determine if the docks and finger piers are machinery, apparatus, or equipment.
N.J.S.A 54:4-1.15 contains the following provision:
“Machinery, apparatus or equipment” means any machine, device, mechanism, instrument, tool, tank or item of tangible personal property used or held for use in business.
[L.1992, c. 24, § 4]
Machinery and apparatus are also defined in two different sections of the New Jersey Administrative Code. Under Subchapter 10,
*379 Real Property Defined, of Chapter 12 of Title 18 of the New Jersey Administrative Code, the definition is as follows:
“Machinery, apparatus or equipment” means any machine, device or mechanism, instrument, tool or other item of property directly used in the manufacture, assembly, refining or processing of property or in the sale of services or goods in the regular course of business. The term includes, but is not limited to, that machinery, apparatus or equipment described in N.J.A.C. 18:24—4.2. The term also includes machinery, apparatus or equipment directly used in the production for sale of gas, water, steam, electricity or telecommunication services and such items directly used in the production of property on farms as defined in N.J.S.A. 54:32B-8.16.
INJ.A.C. 18:12-10.1]
The following definition is also contained in the code:
“Machinery, apparatus, or equipment” means any complex, mechanical, electrical or electronic device, mechanism or instrument which is adapted to the accomplishment of a production process, and which is designed to be used, and is used, in manufacturing, converting, processing, fabricating, assembling, or refining tangible personal property for sale.
[N.J.A.C. 18:24-4.2]
The Business Retention Act provides that the Director, Division of Taxation may adopt rules and regulations to implement and administer the act. N.J.S.A 54:4-1. See L.1992, c. 24, § 3. Although the Director’s definitions predate the Act, there is no reason not to rely on the definitions in the Administrative Code. They are comprehensive and have not been changed since the approval of the statute.
The latter code provision was considered in Panta Astor, Inc. v. Dir., Div. of Taxation, 8 N.J.Tax 464 (Tax 1986). After setting forth dictionary definitions for machinery, apparatus and equipment, Judge Hopkins said, “[t]he above definitions show that ‘machinery’ includes the working parts of a ‘machine’, ‘equipment’ includes ‘implements’ used in an operation and ‘apparatus’ is considered a synonymous cross reference to equipment.” Id. at 473. Indeed, Webster’s Third New International Dictionary of the English Language Unabridged (1986) gives the following definitions.
Machinery is defined as follows:
*380 1: Machines as a functioning unit: as ... b(l): the constituent parts of a machine or instrument: ... 2a: the means and appliances by which something is kept in action or a desired result is obtained ...
Apparatus is defined as follows:
... 2a: a collection or set of materials, instruments, appliances, or machinery designed for a particular use ... b: any compound instrument or appliance designed for a specific mechanical or chemical action or operation: ...
Equipment is defined as:
... 2a: the physical resources serving to equip a person or a thing ... as (1): the implements (as machinery or tools) used in an operation or activity:____
Words in a statute are to be given their ordinary and primary meaning unless there is an explicit indication of a special meaning to be attached to the words. International Flavors & Fragrances, Inc. v. Taxation Div. Dir., 5 N.J.Tax 617 (1983), aff'd, 7 N.J.Tax 652 (App.Div.1984), aff'd, 102 N.J. 210, 507 A.2d 700 (1986). Using this principle of statutory construction, applying it to the statute and to the administrative code and noting the definitions of machinery, apparatus or equipment, I find as a matter of fact and conclude as a matter of law that the floating docks and finger piers are not machinery, apparatus and equipment. There is simply no evidence before the court that the docks and the piers fit into any of the definitions given.
The statutory definition also refers to personal property “used or held for use in business.” The docks and piers, used for access to and exiting from boats are not “used or held for use in business.” The code definitions also refer to the processing of property for the sale of services and goods in the regular course of business. Accordingly, the alternative in subsection b. of N.J.S.A 54:4r-l does not exclude the floating docks and finger piers from taxation as real property.
It is also necessary to deal with the alternative under subsection a. of N.J.S.A 54:4-1. This subsection provides that real property shall include personal property affixed to the real property unless the personal property can be removed or severed without injury to the real property and the personal property can be removed or severed without material injury to the personal property itself and the personal property so affixed is not ordinarily intended to be *381 affixed permanently to real property. The statutory provisions are in the conjunctive, and all three conditions must be met if the personal property is not to be taxed as real property.
The evidence before me is to the effect that the installation of the piers and the floating docks was intended to be a permanent installation. The fact that the docks and the piers float to accommodate the ebbing and flowing of the tides does not distinguish these docks and piers, for local property tax assessment purposes, from piers and docks permanently installed and affixed to bulkheads and pilings in such a manner that they cannot and do not float. The floating capability of the docks and piers not only provides for ease of entering and exiting boats, as indicated, but it also avoids damage to the docks and piers by rising and falling tides.
The docks themselves are constructed in such a manner that they contain within them electric lines for the transmission of electric energy to the boats docked in the slips and water lines for the delivery of water to the boats. The docks also have built on them Lumiposts which are, in effect, security lights not unlike street lights; and the Lumiposts are part of the infrastructure to supply utility services.
Further evidence of the nature of the installation is the provision of the master deed that the slips cannot be reconfigured without an amendment to the master deed. Indeed, an amendment to the master deed was necessary to accomplish the reconfiguration of the slips reducing the number of slips from 173 in the original master deed to 170 in the amended master deed.
The permanent nature of the installation is indicated by the testimony of one of taxpayers’ witnesses:
Question: And isn’t it generally the intention that the docking system, the dock itself, be maintained in one place?
Answer: Yes. I mean over the long period of time it is—the idea is to keep it in one place. That’s one of the reasons you’re putting pilings into it.
This witness recognized that floating piers and docks of the nature which are the subject matter of this litigation are intended to be permanently affixed to the real property with which they are *382 used. The very nature of marinas and the nature of the boating industry in the resort areas of New Jersey make it clear, that these installations are intended to be affixed permanently to the real property and are not to be altered, modified, reconfigured, reconstructed, moved—except for ebbing and flowing of the tides—or refurbished any more than any structure such as a factory building or a residence, is repaired, refurbished, rehabilitated or otherwise changed. See Chevron U.S.A, Inc. v. Perth Amboy, supra. To quote Rayl v. Shull Enterprises, Inc., 108 Idaho 524, 700 P.2d 567 (1984), “[i]t is beyond comprehension that the system was installed for any temporary purpose.” Id. 108 Idaho 524, 700 P.2d at 571.
Rayl quoted from Johnson v. Hicks, 51 Or.App. 667, 626 P.2d 938 (1981), in which the Oregon Court of Appeals, in dealing with an irrigation system, said “[i]rrigation in a semi-arid region, ... is the very life of the land. It is beyond comprehension that the system was installed for any temporary purpose.” Id. 51 Or.App. 667, 626 P.2d at 941. (Quoting First State and Savings Bank v. Oliver, 101 Or. 42, 198 P. 920 (1921).) See also Western Ag. Land v. State, Dept. of Revenue, 43 Wash.App. 167, 716 P.2d 310 (1986). So too, marinas, the recreation and boating industry, the construction of docks and piers and the providing of slips for the docking of boats constitute a way of life in the recreational areas of New Jersey. No one can realistically say that the subject docks and piers were not ordinarily intended to be affixed permanently to the real property of which they now form a part. They are, as indicated, engineered “to provide solutions to the strictest building code requirements.”
Defendant’s witness also testified that “[t]his is a permanent system.” He distinguished the subject docks and finger piers from a temporary or seasonal operation in which the floating docks, or “stringers,” are of relatively light weight, easily removed from the water after a season’s use and stored upland. He based his conclusion primarily on two considerations. First, the subject docks have an “infrastructure”, by which the witness explained he meant a built-in system for the delivery of electric and water and *383 other utilities to the boats using the slips in the marina. This requires a certain amount of rigidity to reduce the possibility of rotation which would damage or destroy the infrastructure. Secondly, the subject docks and piers are constructed to remain in place 12 months a year. Even though no one lives on the boats from November 15 to March 1, the marina is constructed for year-round use with boats to remain in the slips along the docks and finger piers in storage or for use, other than for residence purposes, by the owners if they so desire. In actuality, the finger piers, docks and ramps attached to the bulkheads form one permanent system with the bulkheads to provide a means for entering boats from the upland and for exiting the boats to the upland.
Defendant’s witness is a professional engineer and professional planner of the State of New Jersey. His consulting firm is the municipal engineer for certain municipalities in Cape May, Cumberland and Atlantic Counties, all counties with extensive shore lines. His testimony, together with other evidence, establishes that the docks and finger piers are ordinarily intended to be affixed permanently to real property. The opinion is amply supported by the facts to which the witness testified and his reasoning in dealing with those facts. I adopt his opinion.
The weight to be given to an expert’s opinion depends especially upon the facts and reasoning which are offered as the foundation of his opinion. Ocean City v. Landolfo, 132 N.J.Super. 523, 528, 334 A.2d 360 (App.Div.1975). The weight and value of expert testimony are for the trier of the facts. Robbins v. Thies, 117 N.J.L. 389, 398, 189 A. 67 (E. & A.1937). An expert’s opinion may be adopted in whole or in part or completely rejected. Middlesex Cty. v. Clearwater Village, Inc., 163 N.J.Super. 166, 174, 394 A.2d 390 (App.Div.1978) certif. den. 79 N.J. 483, 401 A.2d 239 (1979).
[Atlantic City v. Atl. County Bd. of Tax., 2 N.J.Tax 30, 42-43 (1980)]
The result in this case does not do violence to the Business Retention Act. According to the Senate Budget and Appropriations Committee Statement, Senate Bill 332, L. 1992, c. 24, the act “amends the description of locally taxable property to reaffirm the Legislature’s regularly stated position of excluding machinery, apparatus and equipment used or held for use in business from local taxation.” The statement says that the Act’s intent is to *384 reject and reverse the limiting of business property exclusions in certain cases such as Texas Eastern v. Div. of Taxation, 11 N.J.Tax 198 (1990), Am. Hydro Power Partners v. Clifton, 11 N.J.Tax 12 (1990) and Badische Corp. v. Town of Kearney, 11 N.J.Tax 385 (1990).
In Texas Eastern, the court held that items such as gauges and electrical control systems and the valves, pipes, regulators, compressors, cooling systems, lubricating oil systems, supervising controls and instrumentation affixed to plaintiffs pipeline, were real property. The court found that the intent of the legislation then in effect was to broaden the definition of real property and to narrow the definition of personal property. This case was determined by the judges comprising the entire Tax Court pursuant to R. 8:8-6.
In Am. Hydro Power Partners, the court held that hydropower equipment was real property. In Badische, the court held that the machinery and equipment in a batch ester plant consisting of seven items were taxable as real property.
The docks and finger piers in the present case are substantially different in construction, purpose, function and use from the gauges and electrical equipment of Texas Eastern, the hydropower equipment in Am. Hydro Power and the batch ester plant machinery and equipment of Badische. Therefore, a holding that the docks and piers are real property does not contravene the legislative purpose in the Business Retention Act of narrowing the definition of real property and expanding the'definition of personal property so as to permit New Jersey to compete with neighboring states for manufacturing jobs. N.J.S.A 54:4^1.14.
Plaintiffs acknowledge that the courts of New Jersey have not dealt with the issue presented in this case, but they urge me to adopt the result in Estate of Morgan v. Commissioner of Internal Revenue, 52 T.C. 478, 1969 WL 1687 (Cal.1969), aff'd, 448 F.2d 1397 (9th Cir.1971). In that ease the United States Tax Court held that floating docks and piers are tangible personal property within the meaning of Sections 48 and 179 of the Internal Revenue Code of 1954 which deal with investment credits. The taxpayers’ *385 primary reason for using floating docks was their convenience to boat owners in boarding and disembarking from the boats. Taxpayers claimed investment credits for the expenditures for the floating docks. The Commissioner disallowed the investment credits for the reason that the docks did not qualify as “tangible personal property” within the meaning of Section 48. The court said that the only issue for decision before it was whether the floating docks and the pilings on which they ride with the tides qualify as “tangible personal property” within the meaning of Sections 48 and 179.
After reviewing the language of the code, the court said that neither Section 48 nor 179 defines the term “tangible personal property”. “Tangible personal property” was defined by Sections 1.48-l(c) and 1.179-3(b) of the Treasury Regulations as they existed at the time of the Morgan opinion. Both of these regulations state, among other things, that local law shall not be controlling for purposes of determining whether property is or is not “personal”.
The court rejected the Commissioner’s contention that the floating docks, together with the pilings, are inherently land improvements within the meaning of the regulations because they are permanently attached or affixed to land, and said that “[t]he evidence presented at the trial established that the floating docks are not inherently permanent structures.” Estate of Morgan, supra, 52 T.C. at 48, 1969 WL 1687. The court said that it reached this conclusion based on the fact that the docks float on the water as independent units rising and falling with the tide. While lateral motion of the docks is limited by the pilings, the court said that the docks are portable: they can be readily removed and placed in other locations or configurations, and they are not attached or affixed to land. The court said that the gangways, or ramps, merely rest on the docks by means of rollers; the electrical and plumbing connections are not significantly different from those of ships and boats which depend on land-based utilities when the vessels are docked; and the fact that pilings are used to guide the docks does not convert them into permanent *386 fixtures. The court did, however, hold that the pilings are permanent and are real property. The court concluded that the docks and piers are tangible personal property within the definition of the applicable sections and regulations. The court did acknowledge that all of the docks before the court for the years in question appeared on the assessment rolls and tax bills of Marin County as improvements to real property for California property tax purposes.
In affirming the Tax Court, the Court of Appeals referred to Minot Fed. S. & L. Assn. v. United States, 435 F.2d 1368 (8th Cir.1970). The reference to that case is instructive in considering the applicability of the principles in the Federal Court cases to the issue before me. In Minot, the Court held that movable partitions which did not bear any structural load and can be arranged as room dividers and easily moved from floor to floor or from building to building were personal property entitled to investment credit under 26 U.S.C.A § 48(a)(1) (1954). They have a ready market if the owner wants to dispose of them after use, and when firms move their offices, “the partitions are transferred with the desks, typewriters and other office equipment.” Minot Fed. S. & L. Assn., 435 F.2d at 1369.
The test used in Morgan, namely that “the floating docks are not inherently permanent structures” is similar in language to our statutory provision, namely, “not ordinarily intended to be affixed permanently to real property”, but different in application. See Minot Fed. S. & L. Ass’n v. United States, supra.
Plaintiffs’ reliance on the Morgan case is misplaced because there is a different taxing authority and a different type of tax being considered. Finally, the Morgan case is simply not controlling on this court.
I am not controlled by the decisions of other jurisdictions in interpreting the intent and scope of our act. United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 168, 72 A.2d 190 (“[W]e are not controlled by the decisions of federal or other jurisdictions in interpreting the intent and scope of our own Workmen’s Compensation Act”); In re The Summit and Elizabeth Trust Co., 111 N.J.Super. 154, 166, 268 A.2d 21 (App.Div.1970) (“[I]n the construction and application of our statutes we are not bound by a decision of the federal district court.”)
[Mariner’s Landing v. Taxation Div. Dir., 11 N.J.Tax 215, 225 (Tax 1989)]
*387 I find as a fact from the total evidence that the floating docks and finger piers which are the subject of this litigation are ordinarily intended to be affixed permanently to the real property to which they are affixed. They are therefore not personal property under N.J.S.A. 54:4—1.9(a)(3). The floating docks and piers are real property for local property tax purposes. A judgment will be entered that the subject property is assessed as follows:
Land $ 5,000
Improvements 20,600
Total $25,600.