[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two cases were consolidated for trial. Norwest Marine, Inc. ("Norwest") is the owner of a marina located at 7 River Road in the Town of Stonington. Norwest also owns premises known as 22 River Road in the Town of Stonington located across the road from 7 River Road. The properties at 7 and 22 River Road are the subjects of these real estate tax appeals.
On October 20, 1995, Norwest purchased 7 and 22 River Road from Edward Vallerie and became liable for the real estate taxes on the properties.
In the case of Vallerie v. Town of Stonington, Docket No. CV 96 0539152, Norwest and Vallerie brought this action under General Statutes § 12-119 alleging that the assessment on 7 River Road by the town's assessor, as of the revaluation date of October 1, 1994, was manifestly excessive and illegal. This appeal challenges the assessor's valuation on the lists of October 1, 1994[1] and October 1, 1995.
In Vallerie, the town filed a special defense alleging that the plaintiffs failed to exhaust their administrative remedies by failing to first appeal to the town Board of Assessment Appeals, in that the issue here is only one of valuation. The plaintiffs denied the allegations in the special defense.
The reason the plaintiffs bring Vallerie under § 12-119 is the plaintiffs' claim that the docks and boat slips in the subject marina are not part of the real estate but rather personal property. The plaintiffs claim that the assessor illegally valued personal property as real estate.
In Norwest Marine v. Town of Stonington, Docket No. CV 97 0542636, Norwest appeals, pursuant to General Statutes § 12-117a, the assessments on its 7 and 22 River Road properties on the grand list of October 1, 1996.
7 River Road
7 River Road consists of a marina containing four acres of CT Page 5915 land, with 980 feet of frontage on the Pawcatuck River and 988.9 feet of frontage on River Road. 74,800 square feet of the premises has blacktopped paving for access vehicle parking and boat storage. There are underground fuel storage tanks on the premises. The premises have municipal sewers, water, electric and gas services. Prior to 1986, the subject premises were zoned industrial. In 1987, the zone was changed to marine commercial (MC-80) which permits a marina use of the property. The present marina was constructed in 1987 and 1988. The subject premises are improved with a one story frame retail store with an attached concrete block garage with two bays, built in 1940. There is also a detached one story frame pavilion structure built in 1989 containing 686 square feet with an open porch. This building contains mens and ladies bathrooms and laundry areas for marina users. There is a small picnic area for recreational use on the property.
Additional site improvements consist of 133 docking slips. Metal ramps lead down to floating docks 6 feet in width for the main docks and 3 feet in width for finger piers which range from 20 feet to 40 feet in length. There is a 35 ton travelift boat cradle and a dedicated space for a lift to accommodate on-land boat storage. There are concrete walkways on bulkheads. The docks have fresh water and electricity available to boats using the slips. The river has a depth of 10 feet at the subject premises. The docks and the slips remain in the water throughout the year. The docks are used to get to the fingers which contain the boat slips. The slips are on open water. The docks and slips float up and down with the tide but are kept in place with 70 to 80 pilings in the river. The docks are attached to bulkheads which are imbedded in concrete. The docks contain utility stanchions with lights that act as street lights. The stanchions also contain lines for water, electricity and telephone service. The water lines are turned off in the winter. There are a total of 133 slips attached to 4 docks. The docks are periodically removed, repaired and replaced. The economic life of a dock is about 15 years.
Prior to October 1, 1996, the owner of the subject property did not declare the docks and the fingers at the marina as personal property. For the list of October 1, 1996, the plaintiff filed a list of personal property which contained the docks and fingers at the manna. The plaintiff also filed an amended declaration of personal property for October 1, 1995. The town's assessor considered the docks and fingers to be an integral part CT Page 5916 of the real estate comprising the marina. The assessor considered the docks to be an improvement to the real estate, and, therefore, part of the real estate, not personal property.
The issue with respect to the plaintiffs' appeal in Vallerie
is whether the docks and fingers of the subject marina are realty or personalty.
In determining whether the docks and fingers are personalty or realty we must first look at whether the docks and fingers are fixtures. If they are fixtures, the personalty becomes part of the property and they are considered realty. Waterbury PetroleumProducts v. Canaan Oil Fuel, 193 Conn. 208, 215-16,477 A.2d 988 (1984). To constitute a fixture, we must look at the character of how the personalty was attached to real estate, the nature and adaptation of the docks and fingers to the uses and purposes to which they were appropriated at the time the annexation was made, and whether the annexer intended to make a permanent accession to the realty. Id. The character of the personal property attached to the real estate is determined at the time that the property Is attached to the real estate. Id.
Our task is to look at the attachment of the docks and fingers at the time of the construction of the marina in 1987 to 1988 to find the intent of the annexer. First, there was no evidence presented to us that the annexer ever claimed that the docks and fingers were personalty as did Norwest when it acquired title in 1995. There was also no evidence presented that the annexer meant the docks and piers to be temporary structures. The main business conducted on the subject premises is that of a marina as a going concern. The marina business at the premises is structured on having docks and finger piers attached to the land by bulkheads and concrete walks, running out into the Pawcatuck River, containing stanchions providing amenities such as electricity and water to the slips, supported by pilings driven into the bed of the river. All of these factors cause us to conclude that the intent of the annexer was to make the docks and fingers a permanent fixture to the land.
Our decision to rule that docks and fingers are part of the real estate of a marina and not personal property is supported byTaylor v. Township of Lower, 13 N.J. Tax 371 (1993), which is directly on point. In Taylor, the New Jersey Tax Court found that floating docks and finger piers are ordinarily intended to be affixed permanently to real property. The court concluded that CT Page 5917 the floating docks and piers are real property for local property tax purposes. Id., 387.
An additional factor in resolving this issue is that the plaintiff's own appraiser valued the subject property using the income approach, with a major portion of the income derived from the same docks and fingers that the plaintiff considers personal property. The income approach is recommended as the most suitable in appraising a marina. Haddad, Nicholas S., "Appraisal of Marinas," Encyclopedia of Real Estate Appraising (3d Ed. 1978), p. 909. In appraising a marina, Haddad states that an appraiser should consider data such as location, size, the number of boat slips, dockage rates, wet and dry storage charges and services provided. Id., p. 882. It seems inconsistent to us for the plaintiff's appraiser to value the real estate of the marina as a going concern by using what the plaintiff claims is personal property as the major source of the income of the property.
We find, based upon the facts of this case, that the docks and piers of Norwest's marina were intended to be permanently affixed to the real property. We therefore conclude that the assessor was correct in valuing the docks and fingers of the marina as an improvement to the land and not as personalty.
Our next issue is whether the assessor's valuation of 7 River Road was excessive on the list of October 1, 1994, the revaluation date. The assessor valued 7 River Road, as of October 1, 1994 at $1,773,180. The plaintiff's appraiser valued the subject premises on the revaluation date at $1,267,000.
We agree with the plaintiff's appraiser, Eric M. Glidden, and the defendant's appraiser, Robert J. Flanagan, that the highest and best use of the subject is its present use as a marina. We also agree with Glidden and Flanagan that the best approach to use in valuing the subject property is the income approach.
Both Glidden and Flanagan came up with the same projected income resulting from the rental of the slips and storage. However, Glidden did not include projected market rental income from the use of the retail store, two bay garage and pavilion. The use of the two buildings on the premises is productive in contributing income to the marina. Glidden used a vacancy rate of 25% for the slips and docks, whereas Flanagan used a 5% vacancy rate when considering the rental income for the slips and buildings and no vacancy rate when considering the income from CT Page 5918 storage. We consider a credible overall vacancy rate to be 10%, based on a review of the information provided by both appraisers. Glidden's use of 45% of the effective gross income for expenses is slightly less than the actual total expenses determined by Flanagan. In regard to the capitalization rate used by both appraisers to determine income value, Glidden used the direct capitalization approach with a tax loaded capitalization rate of 12.12%. Flanagan, on the other hand, used the discounted cash flow approach over a five year period with a tax loaded capitalization rate of 11.5%. We find Glidden's approach and capitalization rate to be the most credible. Our determination of value is as follows:
 Slips — 133 slips x ($60 x 30 feet) $239,400 Dry docking income — 133 slips ($25 x 30 feet) $ 99,750 Building-Retail garage 5,492 sq. ft. at $8 per sq. ft. $ 43,936 Pavilion 686 sq. ft. x $3.00 per sq. ft. $ 2,058 Estimated vacancy (10%) ($ 38,514) Effective Gross income $346,630 Operating Expenses ($156,616) Net Operating Income $190,014
Capitalization rate of 12.12%
Fair market value of 7 River Road:
 $190,014. 1212 =$1,567,772
We therefore find that the fair market value of 7 River Road on October 1, 1994 was $1,567,772.
22 River Road
We next turn to the valuation of 22 River Road. 22 River Road is a warehouse storage building with an attached office area sitting on approximately one-half acre of land. The gross building area of the warehouse and office is 17,298 square feet. The office represents about 16% of the building area. The warehouse was built in 1890. The warehouse space is open, unfinished storage with minimal heating. It is currently used as cold storage related to the 7 River Road marina across the street. The present use of the premises defines its highest and best use. The assessor valued the subject premises, as of October 1, 1994, at $378,960. Glidden found the value of the subject to CT Page 5919 be $315,000. Flanagan determined the fair market value of the subject to be $386,000.
The valuation placed upon 22 River Road by the assessor amounts to $21.91 per gross building area. Glidden's valuation is $18.06 per square foot of gross building area. Flanagan's valuation is $22 per square foot of gross building area. We are impressed with the comparable sales selected by Glidden. Sale 3 at 8 River Street in Waterford is a one-story metal warehouse, boat storage, built around 1900 with 32,340 square feet of gross building area. This property sold on October 8, 1993, for $800,000, or $24.74 per square foot. This sale is very comparable to the subject. Sale 2 is a one-story block and metal warehouse built in 1954 containing 17,578 square feet. Sale 2 is located at 251 Otrobando Avenue in Norwich. This property sold for $493,000, or $28.05 per square foot of gross building area on November 9, 1993. Sale 5 at 558 West Thames Street, Norwich, sold for $142,000 on October 27, 1994. This property is a one-story stucco warehouse built in 1946 on .35 acres of land. This 5,548 square foot building sold for $25.59 per square foot of building area. The average unadjusted sale price of Glidden's comparables is $21.25 per square foot, which includes one sale at $11.91 per square foot and one at $13.22 per square foot. The only comparable selected by Flanagan which we find comparable to the subject is 505 Norwich Avenue, Norwich. This property sits on 1.68 acres and contains a 19,864 square foot one-story concrete block warehouse constructed in 1978. This property sold on July 20, 1994 for $380,000, or $19.13 per square foot.
In our view, there are sufficient comparable sales to analyze for a determination of value of 22 River Road based upon the sales approach. The average price per square foot of the four sales that we find comparable to the subject is $24.38 per square foot. We recognize that three of these comparables were younger in age than the subject and should be adjusted down to equate to the subject property, yet we were impressed with Glidden's sale 3 which, except for double the size of the gross building area, was very similar in all respects to the subject. With the assessor's valuation of 22 River Road at $21.91 per square foot of gross building area, we cannot find, in light of the evidence presented in this case, that the valuation is excessive. Valuation of real property is not an exact science but rather an approximation.MacLean v. Town of Darien, 43 Conn. App. 169, 173, 682 A.2d 1064, cert. denied 239 Conn. 943, 682 A.2d 122 (1996). CT Page 5920
Accordingly, judgment may enter in favor of the defendant town in Vallerie v. Town of Stonington, Docket No. CV 96 0539152, in that the assessor did not act illegally in assessing the docks and piers as improvements to the real property of the marina.
As to Norwest Marine. Inc. v. Town of Stonington, Docket No. CV 97 0542636, judgment may enter for the plaintiffs as to the first count for 7 River Road, reducing the fair market value, on the October 1, 1996 grand list, to $1,567,772. As to the second count of this file, judgment may enter in favor of the defendant town, in that the assessor's valuation of 22 River Road is not excessive.
No costs shall be awarded to either party.
Arnold W. Aronson Judge Trial Referee